**Cheri Robin HATCHER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–95–00099–CR.

Court of Appeals of Texas, Texarkana.

Argued Dec. 11, 1995.

Decided Feb. 7, 1996.

Rehearing Overruled March 5, 1996.

John F. Lubben, III, Dallas, for Appellant.

Anne Wetherholt, Assistant District Attorney, Dallas, Sue Korioth, Assistant District Attorney, Dallas, for State.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Cheri Hatcher appeals from her conviction for the offense of possession of a controlled substance in an amount less than twenty-eight grams. She contends that the trial court erred by overruling her motion to suppress the evidence obtained during a search of her purse, arguing that the evidence was obtained in violation of article I, section 9 of the Texas Constitution. We conclude that the evidence was not obtained in violation of her rights under the Texas Constitution and affirm.

On April 23, 1994, Jason Taylor, a Mesquite police officer, saw Hatcher drive a car with no front license plate into the parking lot of a convenience store. He approached Hatcher and requested identification. When he checked her identification, he learned that there was an outstanding warrant for her arrest, and he took her into custody. Hatcher asked him to leave her automobile in the parking lot and also asked him to get her purse from the car, which he did. At one point the officer testified that he checked the purse's contents in accordance with police policy applicable whenever an arrestee is transported to jail; he further said that he went through it in the same manner it would have been inventoried at the police station; and he said that any property taken to the police station would be inventoried. The officer looked through the purse, checking for weapons, narcotics, or contraband, and verifying the contents if Hatcher later claimed that something was missing from the purse. During this search, he found her wallet. In a compartment of the wallet was a small baggie containing a yellowish powder that was later determined to be methamphetamine.

■ At a suppression hearing, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). We do not engage in an independent factual review, but instead view the evidence in the light most favorable to the trial court's ruling and determine whether the trial court improperly applied the law to the facts. *Id.* Absent a showing of an abuse of discretion, the trial court's finding should not be disturbed. *Maddox v. State,* 682 S.W.2d 563, 564 (Tex.Crim.App. 1985). The brief facts which we have set out

above seem not to be disputed and are consistent with the facts set forth in both briefs.

The question on appeal is whether the arresting officer's action in opening a zippered or snapped compartment of Hatcher's wallet constituted an unlawful search under article I, section 9 of the Texas Constitution. Hatcher did not at trial, nor does she on appeal, claim that the officer's discovery of the controlled substance violated rights granted to her by the Fourth Amendment of the United States Constitution. Were we making a federal constitutional analysis, we would find little fault with the inventory search before us.

■■■ The Fourth Amendment only requires that the inventory not be a ruse for a general rummaging in order to discover incriminating evidence. *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1, 6 (1990). Police may open closed containers within closed containers so long as it is done in accordance with standardized procedures, where there is no showing that the police acted in bad faith or for the sole purpose of investigation. *See Colorado v. Bertine*, 479 U.S. 367, 375–76, 107 S.Ct. 738, 743, 93 L.Ed.2d 739, 748 (1987). A search is lawful for inventory purposes as a valid exception to the warrant requirement of the Fourth Amendment. *Illinois v. Lafayette*, 462 U.S. 640, 646–47, 103 S.Ct. 2605, 2609–10, 77 L.Ed.2d 65, 71–72 (1983).

Hatcher's attorney asserts only that Hatcher's rights under the Texas Constitution were violated and founds his argument on two Texas cases. The first case is *Autran*, decided by the Texas Court of Criminal Appeals; the second is *Lawson*, decided by a court of appeals, which purports to follow *Autran*. Her attorney's argument and basis therefor is as follows: Article I, section 9 of

the Texas Constitution provides citizens a greater right to privacy than does the Fourth Amendment (citing *Heitman v. State*, 815 S.W.2d 681, 690 (Tex.Crim.App.1991)); and the Texas Constitution guarantees provide a privacy interest in closed containers which is not overcome by the general policy considerations underlying an inventory (citing *Autran v. State*, 887 S.W.2d 31, 41–42 (Tex. Crim.App.1994)).

The plurality opinion in *Autran* in fact seems to support counsel's argument. *See Autran*, 887 S.W.2d at 41–42. *Lawson* likewise supports the argument. *State v. Lawson*, 886 S.W.2d 554, 556 (Tex.App.—Fort Worth 1994, pet. ref'd). However, the court of appeals in *Lawson* erroneously believed it was merely following binding precedent.[1] We decline to join our sister court or to follow the plurality opinion in *Autran* because we do not believe that *Autran* constitutes either binding precedent or sound law. It is not only sound logic that tells us that a three-judge plurality opinion is not authoritative. The Texas Court of Criminal Appeals itself has said so in plain words. *See Vernon v. State*, 841 S.W.2d 407, 410 (Tex.Crim.App. 1992) (plurality opinion of that court considered not to have significant precedential value); *see also Farris v. State*, 819 S.W.2d 490, 502 n. 3 (Tex.Crim.App.1990) (a two-judge plurality opinion deemed of limited precedential value). It is fundamental that only an opinion which is concurred in by a majority of the court constitutes a precedent. *See* 21 C.J.S. *Courts* § 141(b) (1990).

Furthermore, a more recent four-judge plurality opinion failed to even mention *Autran* in interpreting article I, section 9 as identical to the Fourth Amendment with respect to when a seizure occurs. *Johnson v.*

---

1. The court employed the following reasoning:

In reaching our conclusion, we are mindful of our prior decision in *Heitman v. State*, 836 S.W.2d 840 (Tex.App.—Fort Worth 1992, no pet.), wherein we held that an inventory search of a half-opened briefcase found in an impounded automobile did not violate the defendant's rights under either the Fourth Amendment of the United States Constitution or under article I, section 9 of the Texas Constitution. *Heitman* was an en banc decision, and until *Autran*, was precedent for this court.

*See Ruth v. State*, 653 S.W.2d 437, 438 n. 1 (Tex.Crim.App.1983). Although the plurality opinion in *Autran* does not explicitly overrule *Heitman*, we follow the most recent pronouncements from the Texas Court of Criminal Appeals on the validity of inventory searches under state law. As an intermediate appellate court, we follow the law as enunciated by the highest courts in this state.

*State v. Lawson*, 886 S.W.2d 554, 556 (Tex. App.—Fort Worth 1994, pet. ref'd).

*State*, 912 S.W.2d 227, 229–36 (Tex.Crim.App. 1995). The plurality opinion affirming the court of appeals stated:

> In this case, we find the appellate court's analysis of the Fourth Amendment to be persuasive when applied to Art. I, § 9.[2] There is nothing in the language of Art. I, § 9 to indicate that the Texas Constitution would provide for a definition of seizure that did not include a requirement either that a suspect submit to a demonstration of authority, or that he be subjected to the use of physical force, in order to be considered to have been seized.

*Johnson,* at 234. Moreover, in another recent court of criminal appeals opinion, a majority of the court again avoided even mentioning *Autran* in rejecting a claim that article I, section 9 imposes a more restrictive standard for allegedly pretextual police stops than does the Fourth Amendment. *Crittenden v. State,* 899 S.W.2d 668 (Tex. Crim.App.1995). In a considerable departure from the plurality's approach in *Autran,* the *Crittenden* majority held that,

> [a]bsent some significant difference in the text of the two provisions, or some historically documented difference in attitude between the respective drafters, there would be no apparent reason to prefer an interpretation of Article I, § 9 any different than our preferred interpretation of the Fourth Amendment.

899 S.W.2d at 673 n. 8.

■ The whole basis of the contention on appeal being that article I, section 9 of the Texas Constitution provides greater rights than does the Fourth Amendment, we resolve this question in favor of the State and hold that the trial court properly determined that evidence of the controlled substance was admissible, it having been discovered in a proper inventory procedure. We expressly decline to treat the plurality opinion in *Autran* as precedent.[3]

We affirm the trial court's judgment.

GRANT, Justice, dissenting.

In this dissent, I first address the danger of expanding governmental intrusion into the personal lives of citizens and the need for preservation of individual rights under the Constitution. This case is an example of the expansion of governmental intrusion to the detriment of constitutional protections. The second part of this dissent is a discussion of why even the application of today's far-reaching use of the inventory search does not apply to the present case, because there was no inventory search.

### The Intrusion of Constitutional Rights By the Inventory Search

In my left, inside coat pocket, I carry a small copy of the United States Constitution.[4] I do not carry the Constitution because I am a great constitutional scholar, nor do I study it daily. I carry it to remind me of my responsibility as a judge. I have taken an oath to uphold the Constitution, and I realize that the judiciary is the last bulwark in protecting the constitutional rights of the people.

William Pitt described the right of the citizens of England to be protected from unreasonable searches and seizures in the following words:

> [t]he poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail—its roof may shake—the wind may blow through it—the storm may

---

2. Justice Lagarde in a well-written opinion for a unanimous en banc Dallas Court of Appeals, had reasoned in part that, "We disagree that the language of article one, section nine itself shows an intent to provide a defendant greater protection under the state constitution than that provided under the Fourth Amendment." *Johnson v. State,* 864 S.W.2d 708, 719 (Tex.App.—Dallas 1993), *aff'd,* 912 S.W.2d 227 (Tex.Crim.App. 1995).

3. Hatcher also contends that the search of her purse was unjustified as a search incident to arrest. She cites as authority two dissenting opinions in *Carrasco v. State,* 712 S.W.2d 120 (Tex.Crim.App.1986), and argues that *Autran* has effectively made these dissents the current governing law on searches incident to arrest. Due to our conclusion that the *Autran* plurality opinion is not binding precedent, we cannot agree with this analysis.

4. I would also carry a copy of the Texas Constitution, but it is so wordy it will not fit in my pocket.

enter—the rain may enter—but the King of England cannot enter—all his force dares not cross the threshold of the ruined tenement!

2000 FAMOUS LEGAL QUOTATIONS, 515 (Lawyers Cooperative Publishing Co. 1967).

If the author of this statement were alive today, he should probably add that this protection does not apply if the citizen happens to be in a car. The automobile is the place where most persons confront routine law enforcement activity that may lead to a search and seizure for unrelated possessory offenses. It is not only Sherry Hatcher and those convicted under such a search about whom we should be concerned, but also thousands of drivers whose automobiles are plundered in a search in which nothing was found without a warrant and without probable cause.

The present case involves a warrantless search done without probable cause. On its face, such a search is unreasonable. We have, however, continued to make exceptions to the point that there is very little protection left. If a citizen is walking or in an automobile, under the present status of the United States Supreme Court rulings, there is not a diminished expectation of privacy; rather, there is no expectation of privacy. Studying the cases on search and seizure is like crawling through a maze of inconsistency into a quagmire of misunderstandings.

As the majority opinion pointed out, this appeal is based solely upon the Texas Constitution, but our interpretation of the pertinent provision of the Texas Constitution has always been hand in glove with the search and seizure provision in the United States Constitution; thus, cases decided under both constitutions are relevant. Most state constitutions track the wording of the United States Constitution protecting citizens from unreasonable searches and seizures. The United States Constitution and the Texas Constitution do not carve out an exception in which the individual or the individual's automobile has a diminished requirement of protection from governmental intrusion. The wording of both constitutions lists the security of the person before the security of home is mentioned.[5]

There are three exceptions with which the courts have whittled away the constitutional rights of a citizen to be free from search and seizure. They involve the search for weapons, the plain-view doctrine, and the inventory search.

The right of the police to search the immediate vicinity for weapons for their own protection is a necessary exception.

The plain-view doctrine is an exception to the warrant requirement which permits an officer to seize what he sees in plain sight or open view, if he is lawfully on the premises. *DeLao v. State*, 550 S.W.2d 289, 291 (Tex. Crim.App.1977); *Green v. State*, 892 S.W.2d 220, 222 (Tex.App.—Texarkana 1995, pet. ref'd).

The third exception is the one now before this Court. There is certainly no reason why Texas cannot afford her citizens more carefully guarded protections under the Bill of Rights than the United States Supreme Court has provided on inventory searches. Texas has long protected the individual rights. The search and seizure provision was in the first Constitution of the State of Texas (1845) and has been in every Constitution of this state since that time. Long before the United States Supreme Court held in *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), that the interpretations of the Fourth Amendment guarantees were enforceable against the states through the Due Process Clause of the Fourteenth Amendment, Texas had adopted a rule of procedure excluding any evidence from trial that was obtained from violations of the Constitution. The prohibition of the use of such evidence [6] is set forth in Article 38.23 of the Code of Criminal Procedure, which has been in effect

---

**5.** The Fourth Amendment of the United States Constitution provides that "[t]he people shall be secure in their persons, houses, papers and *effects.*" (Emphasis added.) Article I, § 9 of the Texas Constitution varies only by using the word *possessions* instead of the word *effects*.

**6.** Whether the exclusionary rule is the best method of enforcing the constitution is not part of this discussion, but it does remain the law of the land, not only by court decision, but by acts of the legislature.

at least since 1925. TEX.CODE CRIM.PROC. ANN. art. 38.23 (Vernon Supp.1996).

Many states have seen the need to curtail the inventory search. In *State v. Daniel*, the Alaska Supreme Court determined that its state constitution afforded protection to any closed luggage, briefcases, containers, or packages within a vehicle which is subjected to an inventory search. 589 P.2d 408 (Alaska 1979). The fact that an inventory of the contents of an automobile is undertaken in whole or in part for the benefit and purpose of protecting property of the driver of the vehicle does not change the activity into something other than a search. The Alaska court said that a routine inventory procedure does not allow a warrantless inventory search of clothes, locked or sealed luggage, containers, or packages. For inventory purposes, the officer should merely list the items as closed or locked and permit the owner to request an inventory be made of the contents of the clothes or locked containers if he wishes.

In the case of *Commonwealth v. Ford*, the Supreme Court of Massachusetts held that to be lawful, storage search of an automobile must at least be conducted according to standard procedures established by the police department. 476 N.E.2d 560 (Mass.1985). The Supreme Court of Oregon held in *State v. Lowry* that searches incident to arrest must be limited to items reasonably related to the probable cause for the arrest and that a search incident to an arrest is not to justify an "exploratory seizure" of everything in such person's immediate possession and control. 295 Or. 337, 667 P.2d 996 (Or.1983).

Courts are free to construe state constitutional provisions concerning search and seizure more broadly in favor of privacy than the construction given to the federal provision. *State v. Slockbower*, 79 N.J. 1, 397 A.2d 1050 (1979).

In *Illinois v. Lafayette*, the United States Supreme Court chose to refer to the inventory search as an incidental administrative step following arrest and preceding incarceration. Calling it an incidental administrative step does not lessen the danger of unrestrained inventory searches. 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). In *Lafayette*, the Supreme Court found that a listing or inventory of all items removed from an arrestee's person or possession was an entirely reasonable administrative procedure no matter whether the police actually feared any particular package or container. Unbridled, this type of search leaves no privacy in any case in which some reason can be found to arrest the party being searched.

In the first case in Texas to invoke the inventory doctrine, the party was not under arrest, but rather was rendered unconscious because of an automobile accident. *Robertson v. State*, 541 S.W.2d 608 (Tex.Crim.App. 1976), *cert. denied*, 429 U.S. 1109, 97 S.Ct. 1145, 51 L.Ed.2d 563 (1977). There was no probable cause to believe that there was any contraband or evidence of any crime in his vehicle, but, nevertheless, a purported inventory search was made which led to his arrest. A fishing expedition in the name of an inventory in which there is no probable cause, no warrant, and no connection with the arrest, if there was an arrest, is on its face, in my humble opinion, unconstitutional.

I am not contending that an inventory search, when necessary, be totally eliminated, but I believe that it should be curtailed and that each police department should have a written policy for such inventories emphasizing the least intrusive method. Technology could be used, for example, to provide such a system by surveillance cameras focused on stored automobiles, which would show if anyone had entered one of the automobiles, including the police, or to provide private lockers with computerized combinations, programmed so that these combinations would not be released except to the defendants or assigned parties, and if released prior to that, the unauthorized receiver of information would be recorded on the computer. Another policy could be to give an option to the owner of the property to make arrangements for safekeeping of the property by a relative, friend, or towing garage. *See State v. Mangold*, 82 N.J. 575, 414 A.2d 1312 (1980). Such approaches, as well as others, could protect a vehicle's contents from damage or theft and the police from accusations concerning missing or damaged property.

I realize that my dissent does not alter the ruling of this Court, but even though I cannot correct what I perceive as a fundamental wrong, it is my duty to protest the tragic trend against individual rights. It is my hope the Court of Criminal Appeals will again review the issues set forth in the plurality opinion in *Autran v. State*, 887 S.W.2d 31, 41–42 (Tex.Crim.App.1994), and by a majority opinion give Texas citizens this protection. Allowing a circumvention of a constitutional right erodes the respect for the document by which the people have constituted their government.

### No Inventory Search

The search in the present case does not qualify as an inventory under the present case law for four reasons:

(1) there was no inventory;

(2) the stated purpose by the searching police officer defies the main purpose of an inventory;

(3) the search provided no real protection to the owner of the property; and

(4) no departmental policy as to inventory was shown as required by case law.

First, there was no inventory. By most definitions, an inventory is a listing or cataloguing of items or the contents. The record does not indicate the existence of a list of the items contained in the purse or wallet. This amounted to no more than a plundering into private belongings to see what other items might be found. The Supreme Court has held that an inventory should not be a "ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). At the time of the search, Hatcher's purse was emptied on the hood of the police car while she was handcuffed in the backseat of the police car.

There is no mention of the making of a list; the officer has no knowledge of the total contents of the purse; and the officer admitted that his search was for other illegal items. The record suggests that the idea of an inventory search was an afterthought to justify the on-the-scene search.

In order to determine what type of search has occurred, the court must look to the subjective point of view of the police officer. The stated purpose of the search by the police officer contradicts the purpose for an inventory search. The officer stated that his search was not limited to weapons within the reach of Hatcher, but he testified:

So I went through the contents of the purse, to make sure there's no weapons, guns, narcotics, any contraband, anything like that.

We do—It's basically a search pursuant to an arrest.

This testimony suggests that the search was a fishing expedition for anything that might be found, not limited to weapons and not limited to any crime or probable cause. The officer went inside a closed purse, under his control, and then went inside the closed wallet inside the closed purse, and then went inside a closed zipper pocket or a snap-type pocket inside the closed wallet. In his testimony, he described this as an inventory, but the mere use of the word *inventory* does not magically justify such a search.

In another place in the record, the officer testified that his purpose for searching the purse was "[t]o check for anything that might be contraband or a danger to myself or to her." This does not reflect an intent to protect the contents of the purse from damage or theft.

In *Robertson*, 541 S.W.2d at 610, the court states:

The policy of making an inventory is based upon logic. Most citizens would expect their property to be protected where officers are responsible for taking charge of a wrecked car and removing it from a street. When officers make such an inventory, they know that there might be valuables which should be protected.

None of the reasons given for the inventory search in the present case was to protect the citizen's property, but the search merely sought contraband and did not list other valuables that the purse and wallet might contain. In cases that are upheld on the basis of an inventory search, at least an

inventory should be made. Otherwise, it is clearly a sham.

The officer further testified that there was nothing to suggest that there was a weapon in the wallet. The officer testified that he went through everything in the purse, even after he knew that there was no weapon. He testified that he was looking for any type of contraband or weapon.

The stated purpose by the police officer for the search was not for preserving a list or inventory of what was in the purse, because this was not done, nor was the intention expressed to do so. The closest that the officer came to suggesting that it might be because this was going into secured area was the following testimony:

> I go through that to also check for narcotics, drug paraphernalia, credit cards that don't belong to whoever it is.
>
> Anything that's going to be illegal, because it's going into a secured area. It's going into my jail.

For a legitimate inventory search to exist, there must be something about the inventory that provides a protection to the owner of his property, but because there was no listing of other items in the purse and the police officer's description of them was "typical stuff you see in a woman's purse," there was no protection to the owner in the form of a possible accounting of what she had at the time she was placed in jail. Any claim that this search was for the purpose of an inventory is pretextual.

The United States determined in *Lafayette* that a routine inventory search does not violate the Fourth Amendment if it is done in accordance with established inventory procedures. The record in the present case does not reflect any established inventory police procedures. When asked about the police policy, the officer testified that the first thing he checked for in a purse or dufflebag or briefcase that was going into his car was weapons. Then the officer testified as quoted above about looking for drugs and anything that was illegal.

There was no showing of an established police policy for inventory searches. If it is contended that the officer was enunciating such a policy when he spoke of looking for anything illegal, surely facially such a policy must be considered as a fishing expedition rather than a legitimate inventory search. For these reasons, I cannot find that a legitimate inventory search was conducted. I respectfully dissent.