**Lori Muldner TRUJILLO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–95–01581–CR.**

Court of Appeals of Texas,
Dallas.

Aug. 22, 1997.

Scott Brown, Fort Worth, for Appellant.

Michael J. Sandlin, Asst. Dist. Atty., Dallas, for Appellee.

Before CHAPMAN, MORRIS and HANKINSON, JJ.

## OPINION

CHAPMAN, Justice.

Lori Muldner Trujillo appeals her conviction for possession with intent to deliver a controlled substance. The trial court sentenced Trujillo to six years' confinement, probated for six years. In her sole point of error, Trujillo asserts the trial court erred in denying her motion to suppress evidence. We affirm the trial court's judgment.

Officer Jeffery Gipson, a Dallas/Fort Worth Airport police officer, was called to a terminal X-ray machine because a security officer saw a portion of a disassembled handgun in one of Trujillo's bags. Trujillo admitted she had a broken-down weapon spread throughout her bags. Gipson took Trujillo to an office where he searched her bags. He found all parts of the handgun and assembled it. He then placed Trujillo under arrest and seized all her property.

In response to questioning, Trujillo said she was carrying three or four knives. Gipson inventoried Trujillo's bags and found all but one knife. He also found a locked, blue bank bag that he was unable to open. He then took Trujillo to the airport jail and presented her bags to Sergeant Robert Reed, the attending officer, to be put in the prisoners' property room. Reed told Gipson the bank bag could not be placed in the prisoners' property room unless it was inventoried. Reed picked the lock on the bank bag. Inside the bag, the officers found drugs and drug paraphernalia.

In her sole point of error, Trujillo contends the trial court erred in holding that the search of her locked bank bag and its contents was constitutionally permissible under article one, section nine of the Texas Constitution. Therefore, she argues, the trial court erred in denying her motion to suppress the evidence found in the bag. Trujillo asserts that the search of the locked bank bag was not a permissible search pursuant to arrest. Relying on *Autran v. State*, 887 S.W.2d 31 (Tex.Crim.App.1994), Trujillo contends the search was an impermissible inventory search.

At a suppression hearing, the trial judge is the sole judge of the witnesses' credibility and the weight given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The trial judge may accept or reject any or all of the witnesses' testimony, including the defendant's. *McKittrick v. State*, 541 S.W.2d 177, 184 (Tex.Crim.App.1976). We do not engage in our own factual review. We consider only whether the trial court properly applied the law to the facts. *Romero*, 800 S.W.2d at 543. Absent an abuse of discretion, we do not disturb the trial court's findings. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim.App.1985).

In *Autran*, the defendant was prosecuted for possession of cocaine hidden in a closed box located under the driver's seat of his

vehicle. The box was found and opened during an inventory search of the vehicle following Autran's arrest. Interpreting article one, section nine of the Texas Constitution as providing greater protection than the Fourth Amendment to the federal constitution, the court of criminal appeals held that police officers may not rely on the inventory exception to conduct a warrantless search of a closed or locked container. *Autran,* 887 S.W.2d at 42.

Clearly, *Autran* supports Trujillo's position. However, *Autran,* a three-judge plurality opinion, is not binding precedent. *See Vernon v. State,* 841 S.W.2d 407, 410 (Tex. Crim.App.1992). Since *Autran* issued, two of our sister courts have addressed the question of whether inventory searches are permissible under article one, section nine. The Fort Worth Court of Appeals, noting its responsibility to follow pronouncements from the court of criminal appeals, applied *Autran* to hold an inventory search of a closed container illegal. *State v. Lawson,* 886 S.W.2d 554, 556 (Tex.App.—Fort Worth 1994, pet. ref'd). In contrast, the Texarkana Court of Appeals has twice expressly declined to treat the *Autran* plurality opinion as precedent, holding the complained-of inventory searches of closed containers legal. *Madison v. State,* 922 S.W.2d 610, 613 (Tex.App.—Texarkana 1996, pet. ref'd); *Hatcher v. State,* 916 S.W.2d 643, 645 (Tex.App.—Texarkana 1996, pet. ref'd). In spite of the conflict, the court of criminal appeals refused discretionary review in *Lawson, Madison,* and *Hatcher.* Further, the court of criminal appeals, in two recent cases, neither followed nor distinguished *Autran* in considering whether article one, section nine provides greater protection than the Fourth Amendment. *See Johnson v. State,* 912 S.W.2d 227 (Tex.Crim. App.1995) (holding requirements for determining when a person is seized are same under article one, section nine and Fourth Amendment); *Crittenden v. State,* 899 S.W.2d 668 (Tex.Crim.App.1995) (adopting same analysis under article one, section nine as previously adopted under Fourth Amendment for determining if stop is pretextual).

█ In light of *Autran*'s lack of precedential value and the court of criminal appeals's refusal to provide a definitive answer on the issue of the constitutionality of inventory searches in the face of conflicting decisions by two courts of appeals, we must perform our own independent analysis of article one, section nine. *See Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App.1991). For the reasons discussed below, we decline to follow *Autran*'s pronouncement that inventory searches of closed containers are not permissible under article one, section nine of the Texas Constitution.

There is no substantive difference between the Fourth Amendment and article one, section nine. *Johnson,* 912 S.W.2d at 232. In fact, they are virtually identical. *Id.* at 233. Additionally, they protect the same right to the same degree. *Id.* at 232. Both provisions serve to safeguard individuals' privacy and security against arbitrary invasion by the government. *Heitman,* 815 S.W.2d at 682.

Texas precedent, existing before the Fourth Amendment was made applicable to the states, did not support granting defendants greater protection. *Johnson,* 912 S.W.2d at 233. The Fourth Amendment was made applicable to the states in 1949. *See Wolf v. Colorado,* 338 U.S. 25, 27–28, 69 S.Ct. 1359, 1361–62, 93 L.Ed. 1782 (1949), *overruled on other grounds by Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691–92, 6 L.Ed.2d 1081 (1961). Between 1949 and 1991, the Fourth Amendment and article one, section nine were interpreted to have the same meaning. *Johnson,* 912 S.W.2d at 233.

Since 1991, several courts have addressed the question of the level of protection provided by article one, section nine. In *Johnson,* the court of criminal appeals held that for purposes of determining when a person is "seized," article one, section nine of the Texas Constitution does not provide greater protection than the Fourth Amendment to the United States Constitution, but rather the requirements are the same. *Id.* at 236. This Court has held that the test for determining whether an officer has reasonable, articulable suspicions that justify a stop or detention of an individual is the same under article one, section nine as under the Fourth Amendment. *Brown v. State,* 830 S.W.2d 171, 174

(Tex.App.—Dallas 1992, pet. ref'd). The El Paso Court of Appeals has held that, in determining the constitutionality of metal detector searches, article one, section nine should be construed consistently with the Fourth Amendment. *Gibson v. State,* 921 S.W.2d 747, 764 (Tex.App.—El Paso 1996, pet. ref'd). Applying the same discussion to both constitutions, the First District Court of Appeals found a pat-down search during detention to be legal under both the Texas and federal Constitutions. *Strickland v. State,* 923 S.W.2d 617, 621 (Tex.App.—Houston [1st Dist.] 1995, no pet.).

Having considered the similarities between the texts and purposes of the two constitutional provisions, and noting that in most instances the two provisions have been construed consistently, we hold that article one, section nine does not provide greater protection from inventory searches than does the Fourth Amendment.

 Inventories are routine, administrative, caretaking functions. *South Dakota v. Opperman,* 428 U.S. 364, 370 n. 5, 96 S.Ct. 3092, 3097 n. 5, 49 L.Ed.2d 1000 (1976). The policies behind the inventory search are to protect the owner's property while it is in police custody, to protect the police from claims or disputes over lost or stolen property, and to protect the police and public from potential danger. *Id.* at 369, 96 S.Ct. at 3097. The Fourth Amendment requires only that the inventory not be a ruse for a general rummaging to discover incriminating evidence. *Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990). Police may open closed containers within closed containers so long as it is done in accordance with standardized procedures, when there is no showing that the police acted in bad faith or for the sole purpose of investigation. *See Colorado v. Bertine,* 479 U.S. 367, 375–76, 107 S.Ct. 738, 742–44, 93 L.Ed.2d 739 (1987). Inventories conducted pursuant to standard police department policy are reasonable under the Fourth Amendment. *Opperman,* 428 U.S. at 376, 96 S.Ct. at 3100–01.

Because Trujillo was under arrest, *Gipson* took her bags to the prisoners' property room for safekeeping. Gipson and Reed testified that departmental policy required an inventory of all prisoners' property before allowing it into the property room. Unidentified items are not allowed into the prisoners' property room. They also testified that they opened and searched Trujillo's bank bag in order to inventory the bag's contents before placing it in the prisoners' property room. The inventory, including the search of the closed container, was reasonable because of the general policy considerations underlying an inventory and because it was conducted pursuant to an established departmental policy. *Id.* Accordingly, the contraband was discovered during an inventory search that is permissible under the Fourth Amendment. *Id.* Because article one, section nine of the Texas Constitution does not provide greater protection, the inventory search of Trujillo's property, including the locked bag, conducted prior to placing her property in the prisoners' property room, was legal under the Texas Constitution as well. Therefore, the trial court did not err in denying Trujillo's motion to suppress. We overrule Trujillo's sole point of error.

We affirm the trial court's judgment.