The STATE of Texas, Appellant,

v.

Luis Roberto MERCADO, Appellee.

No. 08–96–00008–CR.

Court of Appeals of Texas,
El Paso.

· May 13, 1999.

Rehearing Overruled June 9, 1999.

Jaime E. Esparza, Dist. Atty., El Paso, for appellant.

Jeffrey D. Rago., El Paso, for appellee.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## *O P I N I O N*

ANN CRAWFORD McCLURE, Justice.

The State appeals the suppression of evidence relating to the possession of a controlled substance. Declining to follow *Autran v. State* and concluding that the Texas Constitution does not afford any greater protection against unreasonable search and seizure than the Fourth Amendment, we reverse the trial court's ruling.

## FACTUAL SUMMARY

On May 18, 1995, El Paso Police Officers Losinski and Hill stopped Luis Roberto Mercado on a downtown street for failure to yield the right-of-way and nearly causing an accident at an intersection. Losinski approached Mercado and asked for his driver's license and proof of insurance. Mercado admitted, and Losinski verified, that Mercado's driver's license was suspended. Losinski then asked Mercado to step out of the car, placed him under arrest for driving with a suspended license, patted him down, and seated him in the backseat of the patrol car. Losinski then called for a tow truck to impound Mercado's car.

While the officers were waiting for the tow truck to arrive, they began what they subsequently characterized as an inventory search on the items in the car. On the passenger side sun visor, the officers found a bank bag. Without first feeling the outside of the bag to determine what might be inside, the officers unzipped the bag and removed the contents. Losinski testified at the suppression hearing that he and his partner believed there might be a large quantity of money in the bag since it was the type in which bank deposits are commonly carried. The officers intended to give the money to Mercado for safe keeping en route to the police station. Instead of money, the officers found a "diamond fold" containing cocaine and a "sneak-a-toke" box containing marijuana. After completing the inventory, the officers transported Mercado to the police station where he was charged with driving with a suspended license, possession of marijuana, and possession of cocaine.

Mercado filed a motion to suppress, relying upon *Autran v. State*, 887 S.W.2d 31, 41–42 (Tex.Crim.App.1994) for the principle that under Article I, Section 9 of the Texas Constitution, a police officer cannot open a closed opaque container found in an automobile pursuant to an inventory search. Losinski testified that Mercado was already handcuffed and in the police car when he and his partner searched the car. He declared that no warrant was obtained because "[i]t's an inventory search that we do on the vehicle.... It was being impounded since he was being placed under arrest." Losinski declared further: "It's our—in our procedures, it says that we just inventory the vehicle, all the items in it, list them on a form that we have and turn that over." Losinski also testified that the police try to perform the inventory search after the arrest but before the tow truck arrives on the scene. There is no indication in the record that the officers suspected the presence of any narcotics in the car before discovering the contraband in the bank bag. The trial court granted the motion to suppress on the basis that the police had opened a closed container pursuant to an inventory search.

## SEARCH INCIDENT TO ARREST

█ On original submission, a panel of this Court reversed the trial court's suppression of the evidence, finding that the State could argue for the first time on appeal that the search of a closed bag in Mercado's automobile was a valid search incident to arrest. *State v. Mercado*, 944 S.W.2d 42, 43 (Tex.App.—El Paso 1997). Declaring that the State, as the appellant, may not argue a point on appeal which was not argued at trial, the Court of Criminal Appeals reversed and remanded the cause to us. *State v. Mercado*, 972 S.W.2d 75, 78 (Tex.Crim.App.1998).

The State argues that it does not have the burden of listing or verbalizing in the trial court every possible basis for upholding the validity of a search. *See e.g., Lewis v. State*, 664 S.W.2d 345, 347 (Tex.Crim.App.1984); *Sullivan v. State*, 564 S.W.2d 698, 704 (Tex.Crim.App.1977); *Pettigrew v. State*, 908 S.W.2d 563, 569 (Tex.App.—Fort Worth 1995, pet. ref'd); *Shannon v. State*, 800 S.W.2d 896, 899 (Tex.App.—San Antonio 1990, pet. ref'd); *Green v. State*, 773 S.W.2d 816, 820 n. 1 (Tex.App.—San Antonio 1989, no pet.); *Villarreal v. State*,

703 S.W.2d 301, 303 (Tex.App.—Corpus Christi 1985, no pet.). In each of these cases, however, the State was the respondent urging the court of appeals to uphold the decision of the trial court. Here, the State has sought to raise an issue for the first time on appeal as an appellant. Although the Court of Criminal Appeals has approved of appellate courts considering alternative theories of law applicable to the facts of the case which *support* the trial court's decision, it has not afforded the courts of appeals latitude to *reverse* a trial court's decision on new theories of law not previously presented to that court for its consideration. *Mercado*, 972 S.W.2d at 77.

■ As a prerequisite to presenting a complaint for appellate review, the complaining party must afford the trial court an opportunity to rule on a specific complaint. TEX.R.APP.P. 31.1. At the hearing on the motion to suppress, the State argued that the search was valid pursuant to an inventory; it did not argue that it was a valid search incident to arrest. As such, the State did not afford the trial court an opportunity to rule on its complaint. Where the State is the appealing party, the basic principle of appellate jurisprudence that points not argued at trial are deemed waived, applies equally to the State and the defense. *Mercado*, 972 S.W.2d at 78. The argument urging a valid search incident to arrest is waived. The State further argues, however, that the search was also a proper inventory search.

## INVENTORY SEARCHES

### Standard of Review

■ The amount of deference a reviewing court affords to a trial court's ruling on a "mixed question of law and fact" often is determined by which judicial actor is in a better position to decide the

issue. *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985); *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997). If the issue involves the credibility of a witness, thereby making the evaluation of that witness's demeanor important, compelling reasons exist for allowing the trial court to apply the law to the facts. *Guzman*, 955 S.W.2d at 87. As a general rule, the appellate courts should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact-findings are based on an evaluation of credibility and demeanor. *Id.* at 89. The appellate courts should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. The appellate courts may review *de novo* "mixed questions of law and fact" not falling within this category. *Id.* Since the issue presented is the legality of the inventory search, we review the suppression *de novo*.

### Application of the Fourth Amendment and the Texas Constitution

■ While an inventory search has long been recognized as a valid exception to the warrant requirement of the Fourth Amendment and the Texas Constitution,[1] the Texas Court of Criminal Appeals initially determined that an inventory search does not include the search of a closed container. *Autran v. State*, 887 S.W.2d 31, 42 (Tex.Crim.App.1994). In *Autran*, police officers were given consent to search the trunk of a vehicle. Inside the trunk was a large ice chest, a cardboard box, a shopping bag, and two suitcases. The officers attempted to open the ice chest but were interrupted when the driver attempted to close the trunk. The driver was

---

1. *See Illinois v. Lafayette*, 462 U.S. 640, 643, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65, 68 (1983); *Benavides v. State*, 600 S.W.2d 809, 810 (Tex.Crim.App.1980);*Evers v. State*, 576 S.W.2d 46, 50 (Tex.Crim.App.1978).

arrested for a traffic violation. Following the established policy of the department, the officers began to inventory the vehicle. Upon opening the ice chest, cardboard box, and shopping bag, they found a large sum of cash covered with cocaine. The defendant moved to suppress the evidence seized from the vehicle, contending that it was seized in violation of the Fourth Amendment of the United States Constitution and Article I, section 9 of the Texas Constitution. The trial judge denied the motion and the Court of Appeals affirmed, holding that officers may search and inventory any container found in a vehicle as a result of an inventory so long as the officers follow established departmental procedures. *Autran*, 887 S.W.2d at 33. In a plurality decision, the Court of Criminal Appeals reversed, holding that while the inventory was lawful under the Fourth Amendment, Article I, section 9 provides greater individual protection which grants a privacy interest in closed containers. *Autran*, 887 S.W.2d at 36, 41. The court determined that police officers may not rely upon the inventory exception to conduct a warrantless search of a closed or locked container. *Autran*, 887 S.W.2d at 42.

Eight months after the issuance of *Autran*, the Court of Criminal Appeals decided *Crittenden v. State*, 899 S.W.2d 668 (Tex.Crim.App.1995) which also discussed the nexus between the Fourth Amendment and Article I, section 9. Crittenden complained that he had been subjected to a pretextual stop and thus the search of his vehicle was illegal under both the Fourth Amendment and Article I, section 9. In a footnote, the Court stated:

> Absent some significant difference in the text of the two provisions, or some historically documented difference in attitude between the respective drafters, there would be no apparent reason to prefer an interpretation of Article I, § 9 any different than our preferred interpretation of the Fourth Amendment. We will not read Article I, § 9 different-

ly than the Fourth Amendment in a particular context simply because we *can*. [Emphasis in original].

*Crittenden*, 899 S.W.2d at 682 n. 8.

Shortly thereafter, the Court issued its opinion in *Johnson v. State*, 912 S.W.2d 227 (Tex.Crim.App.1995). Johnson had been convicted of aggravated possession of cocaine with intent to deliver. The issue was whether he had been "detained" or "stopped" under Article I, section 9, either when the officers initially confronted him or when they chased him and made a show of authority by shouting at him to stop. In its analysis, the court noted that a plain reading and comparison of the language of the Fourth Amendment and Article I, section 9 revealed no substantive difference; indeed the language of the two is virtually identical. *Id.* at 232. Had the framers intended to grant the citizens of Texas greater protection from state actions than they enjoyed from federal actions, then the framers could have drafted the article to reflect that intent. *Johnson*, 912 S.W.2d at 234.

In both *Johnson* and *Crittenden*, the Court of Criminal Appeals failed to overrule, distinguish, or otherwise mention the decision in *Autran*. Four intermediate courts of appeals have specifically rejected *Autran*, all employing essentially the same reasoning utilized in *Johnson* and *Crittenden*. *See Jurdi v. State*, 980 S.W.2d 904, 907 (Tex.App.—Fort Worth 1998, pet. ref'd); *Wells v. State*, 968 S.W.2d 483, 486 (Tex.App.—Eastland 1998, pet. ref'd); *Trujillo v. State*, 952 S.W.2d 879, 881 (Tex.App.—Dallas 1997, no pet.); *Madison v. State*, 922 S.W.2d 610, 613 (Tex.App.—Texarkana 1996, pet. ref'd); *Hatcher v. State*, 916 S.W.2d 643, 646 (Tex.App.—Texarkana 1996, pet. ref'd). We have recently followed suit in *Gonzalez v. State*, 990 S.W.2d 833 (Tex.App.—El Paso, pet. pending). The Court of Criminal Appeals has had the opportunity to articulate that *Autran* remains viable and direct that its reasoning should be applied to searches of closed containers, yet it has refused each

time. Not only has it not corrected any appellate court which has rejected *Autran*, it has not opted to follow it in subsequent opinions. We conclude that Mercado is not afforded any greater protection from unreasonable search and seizure by the Texas Constitution than he is by the United States Constitution. Accordingly, we reverse the decision of the trial court suppressing the evidence obtained in the inventory search and remand this case for further proceedings consistent with this opinion.