Opinion issued May 27, 2004
























In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-00-00625-CR
____________
 
PETER ZAPATA GARZA, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 827061
 

 

OPINION ON REMAND FROM THE
COURT OF CRIMINAL APPEALS
            A jury found appellant, Peter Zapata Garza, guilty of possession, with the intent
to deliver, more than four grams but less than 200 grams of cocaine. The trial court,
after finding true the allegation in an enhancement paragraph that appellant had a
prior felony conviction, assessed his punishment at confinement for 22 years and
sentenced him accordingly.
          In this Court’s original opinion, we held that (1) the evidence presented at trial
was legally and factually sufficient to support appellant’s conviction, (2) appellant
waived any error in regard to the trial court’s denial of his motion to suppress 
evidence because he did not object at trial when the State introduced the evidence that
he sought to suppress, and (3) the trial court did not err in denying appellant’s
request, made pursuant to article 38.23 of the Texas Code of Criminal Procedure,


 for
a jury instruction concerning the legality of an inventory of the contents of appellant’s
van. See Garza v. State, No. 01-00-00625-CR (Tex. App.—Houston [1st Dist.] July
18, 2002) (not designated for publication) rev’d in part and aff’d in part, Garza v.
State, 126 S.W.3d 79 (Tex. Crim. App. 2004).
          Appellant subsequently filed a petition for discretionary review with the Court
of Criminal Appeals challenging this Courts’ holdings that the trial court did not err
in denying his request for an article 38.23 jury instruction and that appellant waived
any error in regard to the trial court’s denial of his motion to suppress evidence.


 In
response to appellant’s petition, the Court of Criminal Appeals affirmed our holding
that the trial court did not err in denying his request for an article 38.23 instruction,
but reversed our holding that appellant waived any error in regard to the trial court’s
denial of his motion to suppress evidence. Garza, 126 S.W.3d at 85-88.
          Accordingly, on remand, we address appellant’s remaining two issues, in which
he contends that the trial court erred in denying his motion to suppress evidence
because the search and seizure of evidence from his van was conducted in violation
of the Fourth Amendment


 and Article I, section 9 of the Texas Constitution.


                                                        Background
          Harris County Sheriff’s Deputy W. Kelly, Jr. testified that, while on patrol on
FM 1960 around midnight on October 24, 1999, he saw appellant driving a van. 
When Kelly saw appellant make an illegal left turn, Kelly activated the emergency
lights of his patrol car. Appellant, the van’s sole occupant, stopped the van in a post
office parking lot. After appellant gave his driver’s license to Kelly, Kelly ran a
computer search, learned that appellant had two outstanding arrest warrants, and
called for backup help. When Harris County Sheriff’s Deputy R. Rooth and Sergeant
B. J. Taylor arrived at the scene, Kelly arrested appellant. As Kelly placed appellant
into a patrol car, Rooth and Taylor began to inventory the contents of appellant’s van.
          Deputy Rooth testified that, as he inventoried appellant’s van, he saw, in plain
view, an open baby formula can containing narcotics paraphernalia consisting of a
small metal bowl, screen, spoon, and some small clear plastic bags. Rooth, based on
his experience, explained that these items are commonly used for sifting and
packaging cocaine.
          Sergeant Taylor testified that, as he inventoried appellant’s van, he found what
appeared to be a used baby diaper tightly wrapped in a plastic grocery bag. The bag
was located on top of some of appellant’s personal business papers in a cardboard
box, with no lid. Taylor explained that he could see through the bag and tell that a
baby diaper was inside. When Taylor detected no odor from the diaper, he opened
it and found two plastic bags containing a white, chunky substance. Deputy Kelly
tested the white substance at the scene, and it tested positive for cocaine. Charles
Moore, a senior forensic chemist for the Harris County Medical Examiner’s Office,
testified that the two bags contained cocaine, with a total weight of 28.75 grams,
including any adulterants and dilutants.
          Appellant testified that he did not make an illegal left turn, the cocaine and
narcotics paraphernalia found in the van did not belong to him, and that he had no
idea that the cocaine was in the van. Although he admitted to having had “a problem”
with cocaine, he denied ever selling or distributing it. On cross-examination,
appellant admitted that he had two prior convictions for possession of cocaine, one
in Harris County and one in Webb County. Appellant further admitted that he had
prior convictions for possession of marihuana and for theft.
Motion to Suppress Evidence
          In his remaining two issues, appellant contends that the trial court erred in
denying his motion to suppress evidence because the search and seizure of evidence
from his van was conducted in violation of the Fourth Amendment and Article I,
section 9 of the Texas Constitution.
          We review a trial court’s denial of a motion to suppress evidence for an abuse
of discretion. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). A trial
court abuses its discretion when it acts without reference to any guiding rules or
principles by acting arbitrarily or unreasonably. Galliford v. State, 101 S.W.3d 600,
604 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d). We will afford almost total
deference to a trial court’s determination of historical facts supported by the record,
especially when the findings are based on an evaluation of the credibility and
demeanor of the witnesses. Guzman v State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997). In reviewing a ruling on a question of application of law to facts, we review
the evidence in the light most favorable to the trial court’s ruling. Id. However, we
review de novo a trial court’s determination of reasonable suspicion or probable
cause. Id. at 87.
          A peace officer’s inventory of the contents of an automobile is permissible
under both the Fourth Amendment and Article I, section 9 if conducted pursuant to
a lawful impoundment. South Dakota v. Opperman, 428 U.S. 364, 375-76, 96 S. Ct.
3092, 3100 (1976); Benavides v. State, 600 S.W.2d 809, 810 (Tex. Crim. App. 1980);
Lagaite v. State, 995 S.W.2d 860, 865 (Tex. App.—Houston [1st Dist. 1999, pet.
ref’d). Inventories serve to protect (1) the owner’s property while it is in custody, (2)
the police against claims or disputes over lost or stolen property, and (3) the police
from potential danger. Opperman, 428 U.S. at 369, 96 S. Ct. at 3097. Inventories
must be conducted in good faith pursuant to reasonable standardized police
procedures. Colorado v. Bertine, 479 U.S. 367, 374, 107 S. Ct. 738, 742 (1987).
          Reasonable cause for impoundment of an automobile may exist when the driver
is removed from his automobile and placed under custodial arrest, and his property
cannot be protected by any means other than impoundment. Lagaite, 995 S.W.2d at
865. The States bears the burden of proving that an impoundment is lawful and may
satisfy its burden by showing that (1) the driver was arrested, (2) no alternatives other
than impoundment were available to insure the automobile’s protection, (3) the
impounding agency had an inventory policy, and (4) the policy was followed. 
Delgado v. State, 718 S.W.2d 718, 721 (Tex. Crim. App. 1986). We note that peace
officers need not independently investigate possible alternatives to impoundment
absent some objectively demonstrable evidence that alternatives did, in fact, exist. 
Mayberry v. State, 830 S.W.2d 176, 180 (Tex. App.—Dallas 1992, pet. ref’d).
Fourth Amendment
          Appellant first argues that the search and seizure of evidence from his van
violated the Fourth Amendment because, “although the officers may have initiated
what was described as an inventory search, the search became investigatory in nature
and thus exceeded the scope of a lawful inventory search.” He asserts that the search
of the diaper, “under the guise of an inventory,” was unreasonable. 
          Appellant notes that an inventory is reasonable and lawful under the Fourth
Amendment only if conducted for the purposes of an inventory and may not be used
by police officers as a ruse for general rummaging in order to discover incriminating
evidence. See Flordia v. Wells, 495 U.S. 1, 4, 110 S. Ct. 1632, 1635 (1990). 
Appellant argues that it is “apparent” that the police officers in this case were not
interested in safeguarding valuables because there was no evidence that a procedure
for an inventory of valuables would include “opening such an innocuous item as what
appeared to be a dirty diaper.” He thus concludes that the inventory of his van “was
clearly a pretext for an investigatory motive.”
          However, the record supports an implied finding by the trial court that the
inventory was not a ruse. Deputy Kelly testified that, when a driver is arrested and
his automobile is to be impounded, it is the policy of the Harris County Sheriff’s
Department to prepare a written inventory of the contents of the automobile to
document any items present and protect the property of the arrested driver. Kelly
further testified that, assisted by Deputy Rooth and Sergeant Taylor, he conducted an
inventory of appellant’s van, prepared a written inventory slip of the contents of the
van, and attached the slip to his report. Rooth specifically noted that the officers were
not looking for narcotics or contraband when conducting the inventory. Considering
this testimony, we cannot conclude that the inventory “was clearly a pretext for an
investigatory motive.” 
          Accordingly, we hold that the trial court did not err in denying appellant’s
motion to suppress evidence on the grounds that the search and seizure of evidence
from appellant’s van violated the Fourth Amendment. 
 

Article I, Section 9
          Appellant next argues that the search and seizure of evidence from his van
violated Article I, section 9 of the Texas Constitution because (1) the impoundment
of his van was “unlawful,” and (2) the search of the “dirty diaper” was unreasonable.
          In regard to the lawfulness of the impoundment, appellant asserts that “the
State failed to prove a lack of reasonable alternatives to justify impoundment of [his]
vehicle.” Texas courts have considered several factors in determining the
reasonableness of an impoundment of an automobile following a custodial arrest,
including whether: (1) someone was available at the scene of the arrest to whom
police could have given possession of the automobile; (2) the automobile was
impeding the flow of traffic or was a danger to public safety; (3) the automobile was
locked; (4) the detention of the arrestee would likely be of such duration as to require
police to take protective measures; (5) there was some reasonable connection between
the arrest and the automobile; and (6) the automobile was used in the commission of
another crime. Josey v. State, 981 S.W.2d 831, 843 (Tex. App.—Houston [1st Dist.]
1998, pet. ref’d).
          Here, appellant asserts that his wife arrived at the scene shortly after the arrest
and “the arresting officers made no effort to determine if anyone was available to take
possession of the van”; his van was neither impeding the flow of traffic nor a danger
to public safety; his van could have been locked; there was no connection between
the arrest and the van; the van was not used in the commission of another crime; and
there was no showing that his detention would be of such duration as to require
impoundment of the van.
          Although there is no evidence that the van was impeding traffic, that it could 
not be locked, or that it had been used in the commission of a crime, other factors
demonstrate that impoundment of appellant’s van was reasonable under the
circumstances. Deputy Kelly testified that he saw appellant driving the van
immediately before he arrested appellant. This demonstrates a reasonable connection
between the arrest and the van. Cf. Bennavides, 600 S.W.2d at 812 (no reasonable
connection between arrest and automobile when automobile found lawfully parked
several blocks from arrest scene). Also, Deputy Rooth testified that, although
appellant’s wife arrived at the arrest scene and identified herself, she did not do so
until after the deputies had already called for a wrecker to tow the van, begun the
inventory, and found the narcotics paraphernalia and cocaine. Therefore, when the
officers had made the decision to impound appellant’s van, at just after midnight,
there was no one at the scene to whom they could have given possession of it. 
Moreover, appellant, the driver of the van, was under custodial arrest and his
detention would likely have been of such duration as to require the deputies to take
protective measures. See Josey, 981 S.W.2d at 843 (where driver of automobile
under custodial arrest, likely duration of driver’s detention required police officer’s
protective measures). The record thus contains ample evidence to support the trial
court’s implied finding that the impoundment of appellant’s van was reasonable and,
therefore, lawful. 
          In regard to the reasonableness of the search of the diaper, appellant asserts that
there was no evidence “that safeguarding [his] property was the basis for removing
the ‘dirty’ diaper from the bag and opening it.” He further asserts that “the handling
of the diaper by [Sergeant] Taylor offered no basis to conclude the diaper contained
a weapon or other contraband.” Relying on Autran v. State, 887 S.W.2d 31, 42 (Tex.
Crim. App. 1994), appellant argues that the search of the diaper was unreasonable,
under Article I, section 9, because the deputies, instead, “could have easily recorded
the existence of the diaper or photographed it.”
          In Autran, police officers, while inventorying the contents of an automobile,
found cocaine inside a closed “plastic key box” located under the driver’s side seat. 
Id. at 33. A three-judge plurality opinion of the Court of Criminal Appeals held that,
Article I, section 9 “provides greater protection” than the Fourth Amendment “in the
context of inventories.” Id. at 42. The plurality opinion “refuse[d] to presume the
search of a closed container reasonable under [A]rt[icle] I, section 9 simply because
an officer followed established departmental [inventory] policy.” Id. It concluded,
thus, that peace officers “may not rely upon the inventory exception” to conduct a
“warrantless search” of a closed or locked container. Id.
          Although the plurality holding in Autran supports appellant’s argument, it is
not binding precedent. See Vernon v. State, 841 S.W.2d 407, 410 (Tex. Crim. App.
1992) (noting that a plurality opinion does not have “significant precedential value”). 
Since Autran, the Court of Criminal Appeals has consistently held that Article I,
section 9 does not offer greater protection against unreasonable searches and seizures
than does the Fourth Amendment. See Hulit v. State, 982 S.W.2d 431, 436 (Tex.
Crim. App. 1998) (holding that Article I, section 9 does not provide greater protection
than Fourth Amendment in regard to searches and seizures made in performance of
“community caretaking function”); Johnson v. State, 912 S.W.2d 227, 235-36 (Tex.
Crim. App. 1995) (holding that requirements for determining when person is seized
under Article I, section 9 are same as under Fourth Amendment); Crittenden v. State,
899 S.W.2d 668, 673-74 (Tex. Crim. App. 1995) (holding that analysis for
determining when stop is pretextual under Article I, section 9 is same as under Fourth
Amendment). Moreover, other intermediate appellate courts, in several cases, have
expressly declined to follow Autran, and the Court of Criminal Appeals has refused
discretionary review in those cases in which a petition has been filed. See Mercado
v. State, 993 S.W.2d 815, 819 (Tex. App.—El Paso 1999, pet. ref’d); Jurdi v. State,
980 S.W.2d 904, 907 (Tex. App.—Fort Worth 1998, pet. ref’d); Wells v. State, 968
S.W.2d 483, 486 (Tex. App.—Eastland 1998, pet. ref’d); Trujillo v. State, 952
S.W.2d 879, 881 (Tex. App.—Dallas 1997, no pet.); Hatcher v. State, 916 S.W.2d
643, 646 (Tex. App.—Texarkana 1996, pet. ref’d).
          The Court of Criminal Appeals has specifically noted that there is “no
substantive difference” between the wording of the Fourth Amendment and Article
I, section 9—each protects individuals against “unreasonable” searches and seizures. 
Johnson, 912 S.W.2d at 232. Moreover, Texas precedent, existing before the Fourth
Amendment was made applicable to state actions, did not support granting
individuals greater protections from state actions under Article I, section 9. Id. at
233. In fact, after the Fourth Amendment was made applicable to the States in 1949
and up until 1991, the Fourth Amendment and Article I, section 9 were interpreted
to have the same meaning. Id. Because of the similarity of the two provisions, the
Court of Criminal Appeals has instructed us that “the Fourth Amendment decisions
of the Supreme Court should be viewed . . . as providing guidance in interpretations
of Art[icle] I, [section] 9.” Id. at 234.
          If we, as an appellate court, “decide to raise the ceiling of freedom of Texas
citizens from unreasonable searches and seizures,” we may do so only “by choosing
in individual cases to interpret Art[icle] I, [section] 9 in a manner justified by the facts
of the case, state precedent on the issue, and state policy considerations.” Id. Here,
none of these considerations justifies such a raising of the ceiling. Accordingly, we
decline to follow the reasoning and holding of Autran. We hold that, “in the context
of inventories,” Article I, section 9 of the Texas Constitution does not offer greater
protection to individuals against unreasonable searches and seizures than the Fourth
Amendment.
          The Supreme Court has held that, under the Fourth Amendment, a peace officer
may open a closed container as part of an inventory of an automobile as long as the
inventory is conducted in good faith pursuant to reasonable standardized police
procedures. Bertine, 479 U.S. at 374-75, 107 S. Ct. at 742-43. We find this Fourth
Amendment authority to be reasonable, persuasive, and in harmony with Texas’
protection against unreasonable searches and seizures. Accordingly, we further hold
that, under Article I, section 9, this standard applies in the context of inventories. 
          Here, Deputy Kelly testified that the inventory of appellant’s van was
conducted pursuant to the departmental policies of the Harris County Sheriff’s
Department. Sergeant Taylor testified that, while conducting the inventory of
appellant’s van, he found what appeared to be a used diaper tightly wrapped in a
plastic grocery bag on top of appellant’s personal business papers. After he detected
no odor from the diaper, Taylor opened it and found two plastic bags containing
cocaine. Because the apparently soiled diaper emitted no odor and was located on top
of appellant’s personal business papers, the record supports an implied finding by the
trial court that Taylor could, in good faith, have concluded that something other than
urine or feces, and which constituted property that needed to be inventoried, was
located inside. 
          Accordingly, we hold that the trial court did not err in denying appellant’s
motion to suppress evidence on the grounds that the search and seizure of evidence
from appellant’s van violated Article I, section 9 of the Texas Constitution.
          We overrule appellant’s two remaining issues.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Keyes.

Publish. Tex. R. App. P. 47.2(b).