**William Randolph HEITMAN, Appellant,**

**v.**

**The STATE of Texas, State.**

**No. 2-85-035-CR.**

Court of Appeals of Texas,
Fort Worth.

Sept. 2, 1992.

Robert M. Rose and John H. Hagler, Dallas, (for appeal only), for appellant.

John Vance, Dist. Atty., Sharon Batjer, Asst. Dist. Atty., Dallas, and Robert Huttash, State Pros. Atty., Austin, for State.

## OPINION

HILL, Justice.

William Randolph Heitman appealed from his conviction by the court upon his plea of nolo contendere to the charge of possession of methamphetamine with intent to deliver. His punishment was assessed at five years in the Texas Department of Corrections, now the Texas Department of Criminal Justice, Institutional Division, probated for five years. The legal history of this case was contained within our last opinion and need not be repeated here. *See Heitman v. State,* 776 S.W.2d 324 (Tex.App.—Fort Worth 1989), *rev'd,* 815 S.W.2d 681 (Tex.Crim.App.1991). Most recently, this court affirmed Heitman's conviction upon rehearing, holding that an inventory search of a half-opened briefcase, found in Heitman's automobile after it had been impounded following his arrest, did not violate his rights under either the Fourth Amendment of the United States Constitution or under article I, section 9 of the Texas Constitution.

In our last opinion we held that article I, section 9 of the Texas Constitution and the Fourth Amendment to the United States Constitution are the same in all material aspects, and construction of article I, section 9 should be in harmony with United States Supreme Court decisions concerning the Fourth Amendment, relying on the Tex-

as Court of Criminal Appeals decision in *Brown v. State,* 657 S.W.2d 797 (Tex.Crim. App.1983). Upon Heitman's petition for discretionary review, the Texas Court of Criminal Appeals departed from that tradition, holding that henceforth it would interpret article I, section 9 issues independently of Fourth Amendment analysis by the United States Supreme Court. This case was remanded so that we might make an independent analysis of Heitman's claim that the inventory search of the briefcase violated his rights under article I, section 9 of the Texas Constitution.

Heitman's sole point of error on remand, then, is that the police search of his briefcase violated his rights under article I, section 9 of the Texas Constitution.

We affirm, because we hold that the search of Heitman's briefcase was a reasonable inventory search, not an unreasonable search prohibited by article I, section 9 of the Texas Constitution.

Article I, section 9 of the Texas Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

TEX. CONST. art. I, sec. 9.

We first note that this constitutional provision protects the citizens of this state only from *unreasonable* searches and seizures. As noted in the interpretive commentary to the provision, "This section does not guarantee against all searches and seizures, but only where the acts of the government constitute an unreasonable search and seizure." TEX. CONST. art. I, sec. 9, interp. commentary (Vernon 1984).

Our courts have long upheld reasonable inventory searches as not being made in violation of article I, section 9 of the Texas Constitution. *See Evers v. State,* 576 S.W.2d 46, 50 (Tex.Crim.App. [Panel Op.] 1978). In that case the court upheld an inventory search that uncovered a handgun in an unlocked briefcase against a claim

that the search violated the defendant's rights under article I, section 9 of the Texas Constitution. Although the court in part relied upon the United States Supreme Court opinion in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), it also relied upon the court's prior expression in *Kolb v. State*, 532 S.W.2d 87, 89 (Tex.Crim.App.1976) that the Fourth Amendment and article I, section 9 serve the same purpose: to safeguard the privacy and security of individuals against arbitrary invasion by governmental officials. The opinion also appears to be based upon the court's independent recognition of the validity of the caretaking function of the inventory search. We recognize that a reasonable inventory search, taken in accordance with established police procedures, is not prohibited by article I, section 9 of the Texas Constitution.

Heitman urges that in this case the inventory was not reasonable because it extended to his locked briefcase. He further urges that the briefcase was opened for the sole purpose of investigation.

 We will first address Heitman's argument that the inventory search was not reasonable because it extended to his locked briefcase. Inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger. *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 741, 93 L.Ed.2d 739, 746 (1987).

R.N. McMahen, a patrolman for the City of Addison, testified that the Addison Police Department inventories vehicles of arrested persons to protect the person driving and to protect the police officer and the department. Heitman makes no contention that an inventory search is for any other purpose than those listed or that any of those purposes is not a reasonable justification for such a search.

In determining whether the search of Heitman's briefcase was a reasonable inventory search, it seems that the appropriate criteria would be to see if the search of that briefcase was reasonably necessary in

view of the recognized purpose of an inventory search, and then weigh the "prophylactic purposes of the inventory search" against the owner's expectation of privacy in the briefcase. *See Gill v. State*, 625 S.W.2d 307, 319 (Tex.Crim.App. [Panel Op.] 1981) (opinion on reh'g).

As was noted in the prior opinions, Heitman's briefcase was found in the passenger section of his automobile, after the vehicle was impounded following his arrest. One half of the briefcase was locked, the other half unlocked. It could be opened enough to remove papers without unlocking the side that was locked. It took officers approximately one minute to "jimmy" with the lock until the locked side was opened. There is no indication that the briefcase was damaged by the police.

As we have previously stated, the purpose of an inventory search is to determine if there is anything valuable or dangerous in property that is being impounded by the police. We hold that it was not unreasonable, therefore, for the police to open Heitman's briefcase to determine if there was anything of value in the briefcase, in case the contents of the briefcase or the briefcase itself were later missing, to prevent Heitman from claiming, at a later date, that there was something of value in the briefcase. We hold that the purpose of the inventory search outweighs any expectation of privacy Heitman might have had in his briefcase, one side of which was unlocked, and the other side of which was readily opened.

Heitman does not specifically argue that the search is unreasonable in view of the purposes of an inventory search. He simply relies on the Texas Court of Criminal Appeals opinion in *Gill*, 625 S.W.2d at 307. We find that the facts in *Gill* are distinguishable. In *Gill*, the Texas Court of Criminal Appeals held on motion for rehearing that an inventory search of the locked trunk of an automobile, when police do not have the key, is not reasonable because the trunk's inaccessibility makes it unnecessary for the purpose of protecting the defendant's property or protecting the police from claims of missing property. In

this case the briefcase was one from which papers, at least, could be removed without unlocking the briefcase, the briefcase was subject to easily being jimmied open, and, of course, the briefcase itself was portable and could easily be moved from place to place. In *Gill,* the police had to use substantial force to enter the locked trunk. In this case substantial force was not required. The court in *Gill* relied, at least in part, upon such a distinction in reaching its conclusion that the search was invalid. *Id.* at 319.

■ Additionally, Heitman urges that the briefcase was opened for the sole purpose of investigation. In support of his contention, he urges that the "impound" form does not contain an inventory of the contents of the briefcase. He further refers to the fact that the officers did not inventory the briefcase at the scene of the arrest, but instead waited until it had been impounded.

As we noted in our original opinion, Officer McMahen, who conducted the search in question, testified that he searched the vehicle, including the briefcase, in accordance with police departmental policy that indicates in writing that officers are to search all parts of a vehicle, including briefcases. He acknowledged that he did not list the briefcase on an impound sheet that he had previously testified was "the impound sheet that was filled out on this vehicle at the time of arrest." He had also identified the sheet as "our documentation that the vehicle was towed and all particulars of what was towed and who towed it and a listing of the condition of the vehicle and things in it." Although the sheet appears to have been designed to contain a list of any items found in the vehicle, it does not appear that the officers in this case used it for that purpose. There was no testimony as to whether there was, or was not, a separate sheet on which items contained in the car were listed. We hold that the evidence supports the trial court's implied conclusion that this was a reasonable inventory search.

The trial court could have reasonably determined, based upon the officer's testi-mony, that the search was an inventory search conducted in accordance with departmental policy. The fact that the officers failed to list the briefcase or its contents on the "impound" sheet would not, in and of itself, invalidate an otherwise valid inventory search. The trial court could reasonably have determined that an inventory might have been made on another sheet, especially in view of the officer's testimony that the sheet to which Heitman refers was filled out at the time of arrest, prior to the inventory, or the court could have reasonably determined that the listing of the briefcase and its contents might have been forgotten upon the finding of the methamphetamine.

■ It would also seem reasonable, under the circumstances, to conduct the inventory after the vehicle had been impounded rather than try to conduct it at the same time as the arrest. In any event, the physical location of the impounded vehicle is not relevant to the validity of an inventory search. *Evers,* 576 S.W.2d at 49. Heitman cites no case in support of his contention that the inventory search is somehow invalid because it was not conducted at the scene of his arrest. We overrule Heitman's sole point of error on remand.

The judgment is affirmed.

LATTIMORE, J., dissenting with opinion.

DAY, J., dissenting without opinion.

LATTIMORE, Justice, dissenting.

We are presently faced with the question of whether article I, section 9 of the Texas Constitution authorizes police, apparently or at least arguably under the penumbra of an inventory search, to pry open, manipulate, or "jimmy" the lock on a briefcase and then use the contents of such as evidence against the operator of the vehicle involved. Tex. Const. art. I, § 9. Via the majority opinion, the court today has opted to further limit the privacy protections afforded all Texans under our State Constitution by interpreting article I, section 9 with the same interpretive constriction as the United States Supreme Court has used in delineating the privacy provision of the Fourth Amendment to the United States

Constitution. *Id.;* U.S. CONST. amend. IV; *see Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). I decline to join in the majority's retreat.

In approving this search, the majority has seized on the nondestructive nature of the entry as well as the fact that substantial force was not used in opening the lock; instead, it was merely "jimmied." We can take judicial knowledge that locksmiths can open without destruction virtually any lock; hence, this decision essentially opens every lockable container to police scrutiny if their probe is under the guise of an inventory search.

Before authorities start "jimmying" locks there needs to be some evident need to do so other than to avoid being falsely accused of stealing the contents of the locked container. The likelihood of theft by others of the contents of a locked briefcase which is in police possession is minimal; therefore, the prophylactic purposes of the inventory search are not sufficient to outweigh Heitman's expectation of privacy in the locked briefcase. *Gill v. State,* 625 S.W.2d 307, 319 (Tex.Crim.App. [Panel Op.] 1980) (opinion on reh'g). This expectation of privacy can be outweighed or overcome only by a reasonable expectation or by a showing of probable cause that the briefcase contains some dangerous instrumentality, such as a bomb or gun. *Id.* at 319–20.

In the present case, I believe that the Addison Police Department should have simply noted on the "impound" sheet that they had recovered "one, locked briefcase" along with any other appropriate description of such. The majority may be beguiled by the State's use of the term "jimmied"; however, such use or misuse of the term does not diminish the significance of the police's intrusive and, in my opinion, unconstitutional conduct. In light of the court's unfortunate constriction of the privacy privileges afforded under article I, section 9 of the Texas Constitution, I dissent.