**Jay JURDI, Appellant,**

v.

**The STATE of Texas, State.**

**Nos. 2–97–135–CR, 2–97–136–CR.**

Court of Appeals of Texas,
Fort Worth.

Oct. 29, 1998.

Robert Ford, Fort Worth, for Appellant.

Tim Curry, Criminal D.A., Charles M. Mallin, Asst. D.A. and Chief of the Appellate Division, Steven W. Conder and William Durkin, Asst. D.A.s, Fort Worth, for Appellee.

## OPINION

CAYCE, Chief Justice.

Jay Jurdi was indicted twice for possession of methamphetamine with intent to deliver. In a single trial, a jury found him guilty of both offenses and the court sentenced him to fifteen years' confinement for each offense, to be served concurrently. In two points, he contends the trial court erred in overruling his motion to suppress evidence and in overruling his motion to sever the causes. We will affirm.

## BACKGROUND

### Cause Number 0555206D

On July 3, 1994, during a routine traffic stop, Officer Robert Woodward of the Bedford Police Department asked appellant if he had anything in the car that Officer Woodward should be concerned about. Appellant replied, "no," and agreed to allow Officer Woodward to search appellant's car.

Officer Woodward testified that he did not find anything in the "common areas" of appellant's car, but found a black nylon bag in the center console. He unzipped the bag and found plastic baggies containing a green leafy substance, which he recognized as marijuana, and rolling papers. At this point in Officer Woodward's search, appellant, who was standing next to the passenger side of the car, asked Officer Woodward, "What are you doing in my personal stuff?" Officer Woodward replied, "You gave me verbal consent to search the vehicle."

Officer Woodward then continued to search the black nylon bag and found small baggies containing rock-like substances, which he believed to be either cocaine or methamphetamine, inside a film cannister. After he finished searching the car, Officer Woodward arrested appellant for possession of marijuana and methamphetamine. Officer Woodward's uncontroverted testimony revealed that at no time during the search did appellant withdraw his consent to the search of his vehicle nor was appellant under arrest.

*Cause Number 0603096D*

Sometime in November or December of 1995, Officer Jaime Ayala of the Arlington Police Department received information from a confidential informant that appellant was dealing in speed. On December 5, 1995, Officer Ayala received a call that appellant would be delivering methamphetamine at 11:00 p.m. at a Texaco on the corner of Highway 360 and Six Flags Drive. Relying on the tip, Officer Ayala went to the Texaco and waited. When appellant arrived, Officer Ayala approached him and asked him if he could search appellant's pockets. Appellant consented and Officer Ayala found a marijuana cigarette in appellant's front shirt pocket. Officer Ayala immediately placed appellant under arrest for possession of marijuana and then, pursuant to Arlington Police Department inventory policy, searched appellant's car to inventory its contents. Officer Ayala testified that he found a black bag containing a Crown Royal bag inside the trunk of appellant's car. Inside the Crown Royal bag, Officer Ayala found drug paraphernalia, including scales and two plastic bags containing a powdery substance consistent with the appearance of amphetamine or methamphetamine.

### MOTION TO SUPPRESS IN CAUSE NUMBER 0555206D

In points one and one-A, appellant contends that the trial court erred in overruling his motion to suppress in cause number 0555206D because the evidence found in the black nylon bag was obtained through an illegal *inventory* search in violation of article I, section 9 of the Texas Constitution[1] as interpreted in *Autran v. State,* 887 S.W.2d 31 (Tex.Crim.App.1994).[2] According to appel-

lant, the search was illegal because Officer Woodward failed to obtain "*specific* permission" to search the bag. [Emphasis supplied.]

■■■ An inventory search by definition is a search conducted after an arrest. *See South Dakota v. Opperman,* 428 U.S. 364, 370, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976). In this case, however, the uncontroverted evidence shows that Officer Woodward did not arrest appellant until after he completed the search of appellant's vehicle, and that Officer Woodward relied upon appellant's consent to conduct the search, not upon a police inventory policy. We find, therefore, that *Autran* is inapplicable and overrule point one. *See Willhite v. State,* 937 S.W.2d 604, 607 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd); *Ashton v. State,* 931 S.W.2d 5, 7–8 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd).

### MOTION TO SUPPRESS IN CAUSE NUMBER 0603096D

In point one-A, appellant contends the trial court erred in overruling his motion to suppress evidence because Officer Ayala searched the Crown Royal bag without first obtaining a warrant in cause number 0603096D. Appellant argues that this case is controlled by *State v. Lawson,* 886 S.W.2d 554 (Tex.App.—Fort Worth 1994, pet. ref'd) where we held that article I, section 9 provides greater protection from inventory searches of closed containers than the Fourth Amendment to the United States Constitution.[3] *But see Trujillo v. State,* 952 S.W.2d 879, 881–82 (Tex.App.—Dallas 1997, no pet.); *Madison v. State,* 922 S.W.2d 610, 612–13 (Tex.App.—Texarkana 1996, pet. ref'd); *Hatcher v. State,* 916 S.W.2d 643, 645

---

**1.** The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.
TEX. CONST. art. I, § 9.

**2.** In *Autran,* a plurality of the court of criminal appeals said "that art. I, § 9 provides a privacy interest in closed containers which is not overcome by the general policy considerations under-

lying an inventory.... [Therefore,] officers may not rely upon the inventory exception to conduct such a warrantless search." *Id.* at 41–42.

**3.** The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. CONST. amend. IV.

(Tex.App.—Texarkana 1996, pet. ref'd) (holding that article I, section 9 does not provide greater protection from searches of closed containers conducted in accordance with police department inventory policy).

In *Lawson,* a panel of this court overruled our prior en banc decision in *Heitman v. State,* 836 S.W.2d 840 (Tex.App.—Fort Worth 1992, no pet.) (en banc), and held that article I, section 9 "provides a privacy interest in closed containers which is not overcome by the general policy considerations underlying an inventory." *Lawson,* 886 S.W.2d at 555–56 (citing *Autran,* 887 S.W.2d at 41–42). Relying solely upon *Autran,* we determined that, unless exigent circumstances existed, a warrantless search of a closed container was no longer reasonable simply because an officer followed departmental policies in conducting the inventory search. *See id.* at 556. In reaching this conclusion, we noted that, although the *Autran* plurality did not explicitly disapprove our holding in *Heitman,* we nevertheless would follow *Autran* because it was the most recent pronouncement from the court of criminal appeals on the issue. *See id.* We now find it necessary to re-examine this holding in light of subsequent decisions of the court of criminal appeals which appear to have rejected the rationale of the *Autran* plurality.

At the outset, it is important to note that *Autran* is a three-judge plurality opinion and, as a result, is not binding precedent and does not overrule established precedent. *See Crittenden v. State,* 899 S.W.2d 668, 671 (Tex.Crim.App.1995); *Vernon v. State,* 841 S.W.2d 407, 410 (Tex.Crim.App.1992); *Trujillo,* 952 S.W.2d at 881; *Madison,* 922 S.W.2d at 613; *Hatcher,* 916 S.W.2d at 645. Although the *Autran* plurality observed that article I, section 9 *may* provide greater protection than that guaranteed under the Fourth Amendment,[4] a majority of the court of criminal appeals has never held that article I, section 9 does provide such protection. To the contrary, the court of criminal appeals has historically interpreted the protections afforded under article I, section 9 to be uniform with the protections guaranteed under the Fourth Amendment. *See, e.g., Moberg v. State,* 810 S.W.2d 190, 197 (Tex.Crim.App. 1991); *Evers v. State,* 576 S.W.2d 46, 48 n. 1, 50 (Tex.Crim.App. [Panel Op.] 1978); *see also Autran,* 887 S.W.2d at 44 (McCormick, P.J., dissenting). Furthermore, in the years since *Autran* was decided, the court of criminal appeals has repeatedly interpreted article I, section 9 in a manner consistent with the Fourth Amendment without reference to the *Autran* plurality decision. *See Johnson v. State,* 912 S.W.2d 227, 233–34 (Tex.Crim.App. 1995) (if "the framers of the Texas Constitution ... had intended to grant to citizens greater protection from state actions than they enjoyed from federal actions, then they could have drafted Art. I, § 9 at that time to reflect that intent"); *Crittenden,* 899 S.W.2d at 673 ("we would abuse our prerogative to construe even like provisions of the state and federal constitutions differently").

In light of the court of criminal appeals' apparent reluctance to rely upon the plurality opinion in *Autran* in deciding subsequent cases, or distinguish or overrule cases holding contrary to *Autran,* we are constrained by the doctrine of stare decisis to follow the rule of the line of court of criminal appeals' decisions that interpret article I, section 9 in a manner consistent with the Fourth Amendment. *See McGlothlin v. State,* 896 S.W.2d 183, 188–89 (Tex.Crim. App.) ("When a rule has been once deliberately adopted and declared and uniformly followed, it should not be abandoned except upon the most urgent of reasons.") (quoting *Gearheart v. State,* 81 Tex.Crim. 540, 197 S.W. 187, 189 (1917)), *cert. denied,* 516 U.S. 882, 116 S.Ct. 219, 133 L.Ed.2d 150 (1995); *Autran,* 887 S.W.2d at 44 (McCormick, P.J., dissenting). We, therefore, join our sister courts in declining to follow *Autran* and hold that article I, section 9 does not guarantee any greater privacy interest in closed containers searched pursuant to a police department's inventory search policy than that found under the Fourth Amendment. *See Heitman,* 836 S.W.2d at 842. To the extent our opinion in *Lawson* holds otherwise, we expressly overrule it.

---

**4.** *See Autran,* 887 S.W.2d at 37; *see also Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App.1991).

▇ In this case it is undisputed that Officer Ayala conducted the inventory search in compliance with the Arlington Police Department's inventory search policy. We find, therefore, that the evidence was admissible and that the trial court properly denied appellant's motion to suppress. *See Colorado v. Bertine,* 479 U.S. 367, 374–76, 107 S.Ct. 738, 742–43, 93 L.Ed.2d 739 (1987); *Stephen v. State,* 677 S.W.2d 42, 44–45 (Tex.Crim. App.1984). Point one-A is overruled.

### MOTION FOR SEVERANCE

In his second point, appellant contends the trial court erred in failing to sever cause number 0555206D from cause number 0603096D in this case. Appellant contends he was prejudiced by the denial of severance because the jury heard evidence regarding two offenses that were extraneous to each other and that occurred a year and a half apart.

▇ We review a trial court's decision regarding severance under an abuse of discretion standard. *See Howard v. State,* 888 S.W.2d 166, 170–71 (Tex.App.—Waco 1994, pet. ref'd). So long as the court's ruling is not so clearly wrong that it lies outside the zone of reasonable disagreement we will not intercede. *See Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g).

Tex. Health & Safety Code Ann. § 481.132(b) (Vernon 1992) provides:

> (b) A defendant may be prosecuted in a single criminal action for all offenses arising out of the *same criminal episode.* If a single criminal action is based on more than one charging instrument within the jurisdiction of the trial court, not later than the 30th day before the date of the trial, the state shall file written notice of the action.

*Id.* (emphasis supplied). A "criminal episode" means the commission of two or more offenses where "the offenses are the repeated commission of the same or similar offenses." *Id.* § 481.132(a)(2). Section 481.132(e) of the Health and Safety Code provides: "If it appears that a defendant or the state is prejudiced by a joinder of of-

fenses, the court may order separate trials of the offenses or provide other relief as justice requires." *Id.* § 481.132(e).

▇ Appellant was indicted for possession of a methamphetamine with intent to deliver in cause number 0555206D on September 20, 1994 and in cause number 0603096D on March 26, 1996. As repeated commissions of the same offense, we find that they constitute the same "criminal episode" as defined under section 481.132(a)(2) and were properly joined in accordance with section 481.132(b).

▇ Whether or not the trial court erred in denying appellant's motion to sever, therefore, depends on whether or not appellant was prejudiced by the joinder. *See id.* § 481.132(e). Although appellant asserts that he was prejudiced by the denial of severance in this case, nothing in the record or in appellant's brief supports such a finding. *See Hernandez v. State,* 938 S.W.2d 503, 508–09 (Tex.App.—Waco 1997, pet. ref'd); *Howard,* 888 S.W.2d at 171. We find, therefore, no error in the trial court's denial of appellant's motion to sever. Appellant's second point is overruled.

The judgments of the trial court are affirmed.