NO. 07-00-0579-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



SEPTEMBER 27, 2001



______________________________




VALTON ELSWORTH REGISTE, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 262nd DISTRICT COURT OF HARRIS COUNTY;



NO. 850988; HONORABLE MIKE ANDERSON, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 Appellant Valton Elsworth Registe appeals from his conviction for possession of
marijuana in a usable quantity of more than five pounds and less than 50 pounds. We
affirm. 

 Pursuant to a plea bargain, on November 14, 2000, appellant entered a plea of
guilty to a charge of possession of marijuana of over five pounds and under 50 pounds. 
The trial court found that the evidence substantiated appellant's guilt, accepted the guilty
plea, and sentenced appellant to two years in the Institutional Division of the Texas
Department of Criminal Justice. Appellant, acting pro se, filed a general notice of appeal
on November 27, 2000. On December 14, 2000, appellant filed a second pro se Notice
of Appeal in which he asserted that he desired to appeal all issues in his case, including
those presented by written motions ruled on before trial, jurisdictional issues, and issues
affecting the voluntariness of his plea. 

 Counsel for appellant has filed a Motion to Withdraw and a Brief in Support thereof. 
In support of the motion to withdraw, counsel has certified that, in compliance with Anders
v. California, 386 U.S. 738, 744-45, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), the record has
been diligently reviewed and that in the opinion of counsel, the record reflects no
reversible error or grounds upon which an arguably meritorious appeal can be predicated. 
Counsel thus concludes that the appeal is without merit. Counsel has discussed why,
under the controlling authorities, there is no reversible error in the trial court proceedings
or judgment. High v. State, 573 S.W.2d 807, 813 (Tex.Crim.App. 1978). 

 Counsel has attached exhibits showing that a copy of the Anders brief and Motion
to Withdraw have been forwarded to appellant, and that counsel has appropriately advised
appellant of appellant's right to review the record and file a response to counsel's motion
and brief. Appellant has not filed a response to counsel's motion and brief. 

 We have made an independent examination of the record to determine whether
there are any arguable grounds meriting appeal. See Penson v. Ohio, 488 U.S. 75, 109
S.Ct. 346, 102 L.Ed 2d 300 (1988); Stafford v. State, 813 S.W.2d 503, 511 (Tex.Crim.App.
1991). We note, as does counsel for appellant, that appellant waived the making of a
record of his plea proceedings. Although a written Motion to Suppress was filed pretrial,
the motion was not heard or ruled on insofar as the record before us shows. The record
reflects no affidavit, assertion or other evidence that appellant's plea was not voluntary as
was found by the trial court and as reflected by the clerk's record. We, like counsel for
appellant, have found no arguable grounds meriting an appeal. We agree that the appeal
is without merit. 

 Accordingly, counsel's Motion to Withdraw is granted. The judgment of the trial
court is affirmed.


 Phil Johnson

 Justice




Do not publish.



 1978); cf Hulit v. State, 982 S.W.2d 431, 436
(Tex.Cr.App. 1998) (holding that article 1, section 9 does not offer greater protection than
the Fourth Amendment and may offer less protection). 

 Being a plurality opinion, Autran is not binding precedent, and we decline to follow
it. Jasper v. State, 61 S.W.3d 413, 421 (Tex.Cr.App. 2001). Rather, adhering to the
doctrine of stare decisis and mindful of the higher court's reluctance to rely on Autran, in
our analysis we will interpret article 1, section 9 consistently with the Fourth Amendment
and address appellant's points simultaneously. McGlothlin v. State, 896 S.W.2d 183, 188-89 (Tex.Cr.App. 1995), cert. denied, 516 U.S. 882, 116 S.Ct. 219, 133 L.Ed.2d 150 (1995);
see also Jurdi v. State, 980 S.W.2d 904, 906-07 (Tex.App.-Fort Worth 1998, pet. ref'd). 

 Appellant acknowledges that following his arrest and transportation to the holding
facility a search of his person, body, and clothing were lawful. He also does not dispute the
seizure of his cell phone. By his argument, however, he focuses on the scope of the
search in opening the battery compartment of the phone and removing the battery to
discover two $100 bills he alleges were erroneously admitted into evidence. 

 A trial court's ruling on the admission of evidence is reviewed for abuse of discretion. 
Weatherred v. State, 15 S.W.3d 540, 542 (Tex.Cr.App. 2000). We must uphold the trial
court's ruling if it is within the zone of reasonable disagreement. Montgomery v. State, 810
S.W.2d 372, 391 (Tex.Cr.App. 1990) (on reh'g). Additionally, in determining the validity of
an evidentiary ruling, we examine the record as it appeared at the time of the ruling. Hoyos
v. State, 982 S.W.2d 419, 422 (Tex.Cr.App. 1998).

 The United States and Texas Constitutions both guarantee the right to be secure
from unreasonable searches and seizures. U.S. Const. amend. IV; Tex. Const. art. I, § 9. 
A warrantless search is presumptively unreasonable. Horton v. California, 496 U.S. 128,
133, n.4, 110 S.Ct. 2301, 2306 and n.4, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). There
are, however, several well recognized exceptions. Two of those exceptions are (1) a
search incident to a lawful arrest and (2) an inventory search conducted pursuant to
standard criteria or established routine. See Weeks v. United States, 232 U.S. 383, 392,
34 S.Ct.341, 344, 58 L.Ed.2d 652 (1914); see also Illinois v. LaFayette, 462 U.S. 640, 648,
103 S.Ct. 2605, 77 L.Ed.2d 65 (1983).

Search Incident to a Lawful Arrest


 Relying on United States v. Edwards, 415 U.S. 800, 803-05, 94 S.Ct. 1234, 39
L.Ed.2d 771 (1974), the State asserts that a search incident to arrest of a person or his
personal effects may take place at a location other than where the arrest occurred. After
Edwards, in United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977),
the Court affirmed the granting of suppression motions where federal agents in exclusive
control of a double-locked footlocker opened it without a warrant an hour and a half after
it had been seized and transported to a federal building. Recognizing that a footlocker, like
an automobile, is mobile, which might make obtaining a warrant impracticable, the Court
nevertheless explained that once the footlocker was under the exclusive control of federal
agents there was not the slightest danger that its contents could be removed or destroyed
or that the arrestee could gain access to retrieve a weapon before a warrant could be
obtained. Id. at 13. Further, because the search of the footlocker was remote in time and
place of the arrest it could not be viewed as incidental to a lawful arrest or justified by any
other exigency. Id., citing Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d
777 (1964).

 The uniformed trooper that arrested appellant testified that, in addition to conducting
a pat down search and a search of appellant's car, the K-9 unit also responded but did not
alert. After appellant was transported to the holding facility, a second search occurred of
his clothes, socks, shoes, and the interior of his cell phone. According to the evidence,
appellant was handcuffed for approximately two hours during the search and the cell phone
was no longer in his immediate control. 

 At the suppression hearing, Ranger Arnold testified that the cell phone was opened
and the battery removed to search for contraband or anything that appellant might use to
harm himself or others such as a razor blade. On cross-examination, however, he
conceded he was searching for the currency used by the confidential informant to make the
buy.

 We conclude the second search conducted at the DPS holding facility was not
justified as a search incident to a lawful arrest. Appellant was in handcuffs for two hours
and the cell phone was under the exclusive control of law enforcement. There was no
danger that appellant might gain access to a weapon or destroy evidence nor was any
exigency demonstrated for failing to obtain a warrant to open the battery compartment of
the cell phone.

Inventory Search 


 The purpose of an inventory search is to protect (1) the owner's property while it
remains in police custody; (2) the police against claims over lost or stolen property; and (3)
the police from potential dangers. South Dakota v. Opperman, 428 U.S. 96 S.Ct. 3092, 49
L.Ed.2d 1000 (1976); Kelley v. State, 677 S.W.2d 34, 37 (Tex.Cr.App. 1984). Further, an
inventory search is reasonable if conducted pursuant to standard police procedure or
established routine and on the basis of something other than suspicion of evidence of
criminal activity. Florida v. Wells, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). An
inventory search "must not be a ruse for a general rummaging in order to discover
incriminating evidence." Id. at 4. Florida v. Wells held that absent standardized criteria or
established routine for opening containers, an inventory search is not sufficiently regulated
to satisfy the Fourth Amendment. Id. at 5.

 At the suppression hearing, Ranger Arnold testified on direct examination as follows:

 A. Well, it is procedure to search someone at an arrest, regardless whether
that person has been searched by a previous officer. It's just natural
operating officer safety procedures. Also, he was being placed in a holding
cell by himself. We needed to make sure that everything was secure in that
holding cell.

 Q. Okay. And that includes anything that he had on his person?

 A. That's correct.

 Q. Making sure that he didn't have any kind of weapons or any kind of illegal
controlled substances going into your holding cell.

 A. That is correct.

* * *


 Q. Tell the Court what you did as far as your search of the defendant went
there in the holding cell.

 A. At that time, I believe we had checked all of his pockets and checked his
shoes and socks. . . . We also checked his cell phone that he had carried
with him and -

 Q. When you say you checked his cell phone, can you tell the Court
specifically what you did?

 A. That I recall, I did remove the battery and located the funds after
removing the battery.

* * *


 Q. And what was your purpose in removing the battery?

 A. Just to see if there was anything in there that [the defendant] could harm
himself with or if there was any contraband in there.

* * *


 Q. The items that you found on his person, did you all take those into
property for safekeeping -

 A. Yes, ma'am.


 During cross-examination regarding the currency used by the confidential informant
and the search of the cell phone Ranger Arnold testified as follows:

 Q. Did you know you needed to find the money when you all were
searching?

 A. Of course that was a concern.

 Q. So you all were looking to find the currency, weren't you, as well as any
drugs or weapons?

 A. That's correct.

 Q. And when you went into the back of that telephone, you were looking for
the currency, weren't you?

 A. Sir, I was looking in the back of the telephone.

 Q. Well, what were you looking for ?

 A. Those three things you just mentioned.

 Q. Okay. The currency and any drugs or any weapons; is that correct?

 A. Yes, sir.


(Emphasis added).


 During trial, Ranger Arnold testified that it was standard operating procedure to
search an arrestee before placing him in the holding facility and that appellant's cell phone
was searched for hidden compartments that might conceal a weapon or contraband. He
reaffirmed that he removed the battery from the phone and found two $100 U. S. currency
bills. Sergeant Luciano testified at trial that appellant's clothing, socks, shoes, and cell
phone were searched at the holding facility for weapons, contraband, or "any other kind of
evidence relating to what you're investigating." (Emphasis added). 

 Some evidence was presented that it is standard procedure to search an arrestee
for safety reasons and for contraband. Additionally, although without detail, Ranger Arnold
testified that appellant's property was taken for safekeeping. However, contrary to well-established precedent, testimony from both Arnold and Luciano demonstrated appellant's
cell phone was taken apart and searched to find evidence of the crime being investigated,
i.e., the two $100 bills. 

 Having previously concluded that the search at the DPS holding facility could not be
validated as incident to a lawful arrest, and assuming, arguendo, that the inventory search
conducted at the holding facility was not sufficiently regulated to satisfy the Fourth
Amendment, abuse of discretion, if any, in admitting the two $100 bills into evidence was
rendered harmless. A harm analysis for the erroneous admission of evidence obtained in
violation of the Fourth Amendment and article 1, section 9 is conducted pursuant to Rule
44.2(a) of the Texas Rules of Appellate Procedure. (1) Hernandez v. State, 60 S.W.3d 106,
108 (Tex.Cr.App. 2001). 

 Sergeants Luciano and Gilbert Arredondo observed the transaction from two
unmarked cars. Although Luciano testified he did not view appellant "hand anything off"
to the informant, Arredondo testified that from his location he witnessed an exchange
between appellant and the informant after they greeted, and after the informant returned
to his car, he gave him a baggy containing the cocaine. 

 The informant testified he had encountered appellant selling cocaine while cruising
his neighborhood and took the information to Sergeant Arredondo, with whom he was
acquainted from prior transactions. Arredondo instructed him to contact appellant and
arrange for the purchase of a quarter ounce of crack cocaine. The informant was
thoroughly searched at the DPS office before riding with Arredondo to a gas station. After
appellant parked his car at the gasoline pump, the informant approached him and appellant
reached inside his car, gave him the "dope" in exchange for $200, after which the informant
returned to Arredondo's car and turned over a baggy of cocaine and the remaining $100
bill.

 The informant confirmed he had two years experience as an informant for DPS and
prior experience with a task force and the FBI. Despite the fact that he had a criminal
record and was on probation at the time of the underlying deal, several officers also
testified to his experience.

 Testimony from a DPS expert in chemical analysis confirmed at trial that the
substance in the baggy purchased by the informant from appellant was 2.95 grams of crack
cocaine. Thus, even if the U.S. currency had been suppressed, the record contains
sufficient evidence for us to conclude beyond a reasonable doubt that the two $100 bills
did not contribute to the conviction. Points of error one and two are overruled.

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice



Do not publish.
1. We must reverse unless we determine beyond a reasonable doubt that the error,
if any, did not contribute to the conviction or punishment.