NO. 07-03-0378-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

NOVEMBER 16, 2004

_____


MICHAEL D. STARNES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-437924; HONORABLE BRADLEY S. UNDERWOOD, JUDGE

_____

Before QUINN and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Appellant Michael D. Starnes was convicted by a jury of possession of a controlled substance with intent to deliver, enhanced, and punishment was assessed by the trial court at 20 years confinement.  Challenging his conviction by two points of error, appellant asserts the trial court erred in admitting illegally seized evidence (1) in violation of the

Fourth and Fourteenth Amendments of the United States Constitution and (2) in violation of article I, section 9 of the Texas Constitution.  We affirm.

Based upon information from a confidential informant that appellant was selling narcotics, law enforcement officials arranged a buy/bust between the informant and appellant.  As instructed by a sergeant with the Texas Department of Public Safety, the informant contacted appellant and offered to buy a quarter ounce of crack cocaine.  After the informant was searched, he was given three $100 bills for the deal.  The transaction occurred at a gas station and although no audio recording was made, several undercover officers in two separate unmarked cars observed.  Following the buy, the informant returned to one of the unmarked cars and turned over the cocaine and an extra $100 bill that was not used.  A uniformed trooper was notified to stop appellant for a traffic violation and arrest him.

Following his arrest and a search of his car and a pat down search, appellant was transported to a holding facility at the DPS office.  Texas Ranger Tony Arnold and Sergeant Vincent Luciano conducted a second search of appellant including his clothing pockets, socks, and shoes.  A standard size Nokia cell phone was confiscated and the battery compartment was opened.  The battery was removed to reveal two $100 bills underneath that were identified as those given to the informant.  Appellant was charged with possession with intent to deliver a controlled substance.

2

Appellant filed a motion to suppress based on the United States and Texas Constitutions challenging the scope of the search of his person and cell phone and specifically urged suppression of any evidence concerning United States currency. Following a hearing at which both sides argued the reasonableness of a search incident to arrest and an inventory search, appellant's motion was denied.

Challenging his conviction by two points of error, appellant asserts the trial court erroneously admitted illegally seized evidence at trial in violation of (1) the Fourth and Fourteenth Amendments of the United States Constitution and (2) article 1, section 9 of the Texas Constitution.

Initially, we must address appellant's invitation to express this Court's direction regarding Autran v. State, 887 S.W.2d 31 (Tex.Cr.App. 1994) (plurality opinion). *Autran* holds that article 1, section 9 of the Texas Constitution provides greater protection than that guaranteed by the Fourth Amendment. Since *Autran*, a majority of the Court of Criminal Appeals has never held that article 1, section 9 provides greater protection. Instead, prior to *Autran*, the Court consistently interpreted the protections of article 1, section 9 uniformly with those of the Fourth Amendment. Moberg v. State, 810 S.W.2d 190, 197 (Tex.Cr.App. 1991); Eisenhauer v. State, 754 S.W.2d 159, 162 (Tex.Cr.App. 1988); Evers v. State 576 S.W.2d 46, 48 n.1, 50 (Tex.Cr.App. 1978); *cf* Hulit v. State, 982 S.W.2d 431, 436 (Tex.Cr.App. 1998) (holding that article 1, section 9 does not offer greater protection than the Fourth Amendment and may offer less protection).

Being a plurality opinion, *Autran* is not binding precedent, and we decline to follow it. Jasper v. State, 61 S.W.3d 413, 421 (Tex.Cr.App. 2001). Rather, adhering to the doctrine of *stare decisis* and mindful of the higher court's reluctance to rely on *Autran*, in our analysis we will interpret article 1, section 9 consistently with the Fourth Amendment and address appellant's points simultaneously. McGlothlin v. State, 896 S.W.2d 183, 188-89 (Tex.Cr.App. 1995), *cert. denied*, 516 U.S. 882, 116 S.Ct. 219, 133 L.Ed.2d 150 (1995); *see also* Jurdi v. State, 980 S.W.2d 904, 906-07 (Tex.App.–Fort Worth 1998, pet. ref'd).

Appellant acknowledges that following his arrest and transportation to the holding facility a search of his person, body, and clothing were lawful. He also does not dispute the seizure of his cell phone. By his argument, however, he focuses on the scope of the search in opening the battery compartment of the phone and removing the battery to discover two $100 bills he alleges were erroneously admitted into evidence.

A trial court's ruling on the admission of evidence is reviewed for abuse of discretion. Weatherred v. State, 15 S.W.3d 540, 542 (Tex.Cr.App. 2000). We must uphold the trial court's ruling if it is within the zone of reasonable disagreement. Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Cr.App. 1990) (on reh'g). Additionally, in determining the validity of an evidentiary ruling, we examine the record as it appeared at the time of the ruling. Hoyos v. State, 982 S.W.2d 419, 422 (Tex.Cr.App. 1998).

The United States and Texas Constitutions both guarantee the right to be secure from unreasonable searches and seizures. U.S. Const. amend. IV; Tex. Const. art. I, § 9.

4

A warrantless search is presumptively unreasonable. Horton v. California, 496 U.S. 128, 133, n.4, 110 S.Ct. 2301, 2306 and n.4, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). There are, however, several well recognized exceptions. Two of those exceptions are (1) a search incident to a lawful arrest and (2) an inventory search conducted pursuant to standard criteria or established routine. *See* Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct.341, 344, 58 L.Ed.2d 652 (1914); *see also* Illinois v. LaFayette, 462 U.S. 640, 648, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983).

**Search Incident to a Lawful Arrest**

Relying on United States v. Edwards, 415 U.S. 800, 803-05, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), the State asserts that a search incident to arrest of a person or his personal effects may take place at a location other than where the arrest occurred. After *Edwards*, in United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the Court affirmed the granting of suppression motions where federal agents in exclusive control of a double-locked footlocker opened it without a warrant an hour and a half after it had been seized and transported to a federal building. Recognizing that a footlocker, like an automobile, is mobile, which might make obtaining a warrant impracticable, the Court nevertheless explained that once the footlocker was under the exclusive control of federal agents there was not the slightest danger that its contents could be removed or destroyed or that the arrestee could gain access to retrieve a weapon before a warrant could be obtained. *Id*. at 13. Further, because the search of the footlocker was remote in time and

place of the arrest it could not be viewed as incidental to a lawful arrest or justified by any other exigency. *Id*., citing Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

The uniformed trooper that arrested appellant testified that, in addition to conducting a pat down search and a search of appellant's car, the K-9 unit also responded but did not alert. After appellant was transported to the holding facility, a second search occurred of his clothes, socks, shoes, and the interior of his cell phone. According to the evidence, appellant was handcuffed for approximately two hours during the search and the cell phone was no longer in his immediate control.

At the suppression hearing, Ranger Arnold testified that the cell phone was opened and the battery removed to search for contraband or anything that appellant might use to harm himself or others such as a razor blade. On cross-examination, however, he conceded he was searching for the currency used by the confidential informant to make the buy.

We conclude the second search conducted at the DPS holding facility was not justified as a search incident to a lawful arrest. Appellant was in handcuffs for two hours and the cell phone was under the exclusive control of law enforcement. There was no danger that appellant might gain access to a weapon or destroy evidence nor was any exigency demonstrated for failing to obtain a warrant to open the battery compartment of the cell phone.

## Inventory Search

The purpose of an inventory search is to protect (1) the owner's property while it remains in police custody; (2) the police against claims over lost or stolen property; and (3) the police from potential dangers. South Dakota v. Opperman, 428 U.S. 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); Kelley v. State, 677 S.W.2d 34, 37 (Tex.Cr.App. 1984). Further, an inventory search is reasonable if conducted pursuant to standard police procedure or established routine and on the basis of something other than suspicion of evidence of criminal activity. Florida v. Wells, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). An inventory search "must not be a ruse for a general rummaging in order to discover incriminating evidence." *Id*. at 4. *Florida v. Wells* held that absent standardized criteria or established routine for opening containers, an inventory search is not sufficiently regulated to satisfy the Fourth Amendment. *Id*. at 5.

At the suppression hearing, Ranger Arnold testified on direct examination as follows:

A. Well, it is procedure to search someone at an arrest, regardless whether that person has been searched by a previous officer. It's just natural operating officer safety procedures. Also, he was being placed in a holding cell by himself. We needed to make sure that everything was secure in that holding cell.

Q. Okay. And that includes anything that he had on his person?

A. That's correct.

Q. Making sure that he didn't have any kind of weapons or any kind of illegal controlled substances going into your holding cell.

A. That is correct.

* * *

Q. Tell the Court what you did as far as your search of the defendant went there in the holding cell.

A. At that time, I believe we had checked all of his pockets and checked his shoes and socks. . . . We also checked his cell phone that he had carried with him and –

Q. When you say you checked his cell phone, can you tell the Court specifically what you did?

A. That I recall, I did remove the battery and located the funds after removing the battery.

* * *

Q. And what was your purpose in removing the battery?

A. Just to see if there was anything in there that [the defendant] could harm himself with or if there was any contraband in there.

* * *

Q. The items that you found on his person, did you all take those into property for safekeeping –

A. Yes, ma'am.

During cross-examination regarding the currency used by the confidential informant and the search of the cell phone Ranger Arnold testified as follows:

Q. *Did you know you needed to find the money when you all were searching*?

A. *Of course that was a concern.*

Q. *So you all were looking to find the currency, weren't you, as well as any drugs or weapons*?

A. *That's correct.*

Q. And when you went into the back of that telephone, you were looking for the currency, weren't you?

A. Sir, I was looking in the back of the telephone.

Q. Well, what were you looking for ?

A. Those three things you just mentioned.

Q. Okay. The currency and any drugs or any weapons; is that correct?

A. Yes, sir.

(Emphasis added).

During trial, Ranger Arnold testified that it was standard operating procedure to search an arrestee before placing him in the holding facility and that appellant's cell phone was searched for hidden compartments that might conceal a weapon or contraband. He reaffirmed that he removed the battery from the phone and found two $100 U. S. currency bills. Sergeant Luciano testified at trial that appellant's clothing, socks, shoes, and cell phone were searched at the holding facility for weapons, contraband, or "*any other kind of evidence relating to what you're investigating*." (Emphasis added).

Some evidence was presented that it is standard procedure to search an arrestee for safety reasons and for contraband. Additionally, although without detail, Ranger Arnold testified that appellant's property was taken for safekeeping. However, contrary to well-established precedent, testimony from both Arnold and Luciano demonstrated appellant's cell phone was taken apart and searched to find evidence of the crime being investigated, *i.e.*, the two $100 bills.

Having previously concluded that the search at the DPS holding facility could not be validated as incident to a lawful arrest, and assuming, *arguendo*, that the inventory search

conducted at the holding facility was not sufficiently regulated to satisfy the Fourth Amendment, abuse of discretion, if any, in admitting the two $100 bills into evidence was rendered harmless. A harm analysis for the erroneous admission of evidence obtained in violation of the Fourth Amendment and article 1, section 9 is conducted pursuant to Rule 44.2(a) of the Texas Rules of Appellate Procedure.[1] Hernandez v. State, 60 S.W.3d 106, 108 (Tex.Cr.App. 2001).

Sergeants Luciano and Gilbert Arredondo observed the transaction from two unmarked cars. Although Luciano testified he did not view appellant "hand anything off" to the informant, Arredondo testified that from his location he witnessed an exchange between appellant and the informant after they greeted, and after the informant returned to his car, he gave him a baggy containing the cocaine.

The informant testified he had encountered appellant selling cocaine while cruising his neighborhood and took the information to Sergeant Arredondo, with whom he was acquainted from prior transactions. Arredondo instructed him to contact appellant and arrange for the purchase of a quarter ounce of crack cocaine. The informant was thoroughly searched at the DPS office before riding with Arredondo to a gas station. After appellant parked his car at the gasoline pump, the informant approached him and appellant reached inside his car, gave him the "dope" in exchange for $200, after which the informant

---

[1]We must reverse unless we determine beyond a reasonable doubt that the error, if any, did not contribute to the conviction or punishment.

returned to Arredondo's car and turned over a baggy of cocaine and the remaining $100 bill.

The informant confirmed he had two years experience as an informant for DPS and prior experience with a task force and the FBI. Despite the fact that he had a criminal record and was on probation at the time of the underlying deal, several officers also testified to his experience.

Testimony from a DPS expert in chemical analysis confirmed at trial that the substance in the baggy purchased by the informant from appellant was 2.95 grams of crack cocaine. Thus, even if the U.S. currency had been suppressed, the record contains sufficient evidence for us to conclude beyond a reasonable doubt that the two $100 bills did not contribute to the conviction. Points of error one and two are overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Do not publish.

11